## Tyler *v.* State.

(Division A.   Dec. 8, 1930.)

[131 So. 417.   No. 29119.]

E. H. Brandon, of Greenville, for appellant.

**Edwin R. Holmes, Jr.**, Assistant Attorney-General, for the state.

**McGowen, J.,** delivered the opinion of the court.

Robert Tyler, the appellant, was indicted, together with three others, for murder, in the killing of one King Lee. Upon motion he was granted a severance. On his separate trial, upon a verdict of guilty as charged, the court sentenced him to be hanged. From this conviction and sentence, appellant prosecutes this appeal.

The conviction rests upon the testimony of Charity Lee, the wife of King Lee, the deceased, and the confession of the accused, or appellant. The deceased was an aged negro who had lived with his wife, Charity Lee, for fifty years, and at the time of his murder was living near James Crossing in Washington county. According to Charity Lee's evidence, she and her husband were sitting by their fireside when five negro boys came to their door and knocked, and were let into their room by

the deceased, King Lee. It was a cold night and King Lee invited them to warm themselves by the fire and told them that they could split some wood which he had to replenish the fire, holding a lamp for them to do so. After they had sat around the fire for some time, the old man told his wife to prepare a bed for the boys so they could spend the night if they wanted to. They did not know the boys. While sitting around the fireside, the old woman became worried about some money, about one thousand dollars, proceeds of life insurance collected on the death of the daughter of the old people, which she had hidden in the house. Being worried about the money, she went into an adjoining room where it was concealed, got it, came back into the room where the boys were, and hid it under her on the cot on which she was sitting. Two of the boys went into the front room as if to go to bed, and while there blew out the light and searched her trunk. About that time, Charity observed the other three negroes had jumped upon her husband, who was lying on the bed, and had put a pillow and quilt on top of him and turned him over on the mattress and were smothering him to death. She said that they mashed him until they killed him. As three of the boys were smothering her husband, the other two grabbed Charity and tied her feet together and blindfolded her, saying "God damn you, give me that money," and, pointing a pistol at her, said, "You got to give it up, if you don't, I am going to kill you." She said, "Boys don't kill my husband, you can have the money," and turned the money over to them. She recognized and identified the appellant as one of the two robbers who had tied her feet together and blindfolded her. He was not, however, one of the three who participated in the actual deed of smothering her husband to death. Neither of them had had any difficulty with the boys previous to the commission of the crime, nor had they ever seen the boys before. After killing the

old man and taking the money from his wife, Charity, as detailed above, the boys left.

The testimony showed that a watch, a razor, and a bracelet were found in the possession of the appellant at the time of his arrest, the watch and razor being identified by Charity as belonging to her husband, the bracelet as having belonged to her daughter, all of which was taken from her house on the night of the murder. The articles were further identified by other witnesses. It was shown also that about twenty dollars in money was found on the person of the appellant when he was arrested.

In the absence of the jury, the court conducted a preliminary examination as to whether a proposed confession made by the appellant was free and voluntary. The testimony of the appellant was to the effect that he had made the confession at a time when he was threatened and under fear. In this he was contradicted by the sheriff and other witnesses.

The appellant testified that Taggert, a deputy sheriff, struck him, and threatened him at the time he went into the cell of the jail. Mr. Taggert stated that before placing the appellant in the cell he searched him, telling the accused at that time to put up his hands, that he wanted to find some of those "twenties" he was flashing around, that upon putting his hands in the trousers of the accused, about where the roll of money would be found, his hand was grabbed by the accused, and thereupon he slapped him telling him to keep his hands up.

There was square conflict in all other respects, and the court, after hearing all of the testimony, overruled the objection to the admission of appellant's confession and permitted it to go to the jury.

Appellant's confession was made on April 24, 1930, in the presence of the district attorney, his stenographer, Mr. E. M. Furnace, a witness, and others, and the con-

fession corroborates, in all respects, except the plan of the six boys to go to James Crossing and commit this robbery, the statement made by Charity Lee on the witness stand. The confession that the appellant made in the presence of others was to the effect that he was informed by Will Ells that King Lee and his wife had some money in their house. Thereupon they planned to go to James Crossing and rob the old folks. Wesley Powers, a cousin of the deceased, went with them to the crossing. He did not go to the home of the old people, but remained in the car, knowing that the old folks would recognize him. After the robbery the accused stated that he and his companions went back to Greenville, met at Alstene Gordon's house, and divided the loot. He stated that his share was forty-nine dollars in cash, and the watch, razor, and bracelet found in his grip at the time of his arrest. He admitted that the money taken from his person was a part of that which they had stolen from the home of the old negroes. On cross-examination, the appellant's attorney developed from the witness, Mr. Furnace, that he had heard the appellant make this same statement on two or three occasions, and on the last occasion his story was taken down in shorthand by a stenographer, transcribed by her, and signed by the accused.

In appellant's confession he said that he and his companions offered Wright, a taxi driver, forty dollars to drive them down to James Crossing; and this statement was verified by Wright.

The signed statement, word for word, was read to the accused, and in practically every detail he admitted making precisely the statements read to him, that he signed it, and that it was made freely and voluntarily on his part. The identification of the accused as one of the party of four negroes who robbed and killed the old man is positive and unequivocal.

The accused, on the witness stand, denied all personal knowledge of the crime, and stated that he procured the details of same from a woman, before his arrest, and that the confession made by him, as sworn to by the witness Furnace, was induced by threats and fear.

After the cross-examination, the district attorney tendered the written confession to counsel for the appellant, offering to allow the appellant to use it and introduce it in evidence without objection by the state. This offer was declined. In the record, this written confession appears as an exhibit to the cross-examination, but the record shows that the district attorney specifically declined to introduce it.

1. We do not think it necessary to again review the authorities at length on the question of the admissibility of the confession in the instant case. The court conducted the preliminary examination out of the presence of the jury, and determined that it was competent. By the evidence of the appellant alone, there was a conflict as to whether it was free and voluntary. The court heard the witnesses, noticed their demeanor on the witness stand, and was warranted in believing, as we view the record, that the confession was free and voluntary. In so far as the evidence of the appellant relative to being struck by Taggert, we think an officer who deals constantly with criminals and places them in jail has a right to make a reasonable search of their persons, and that, when he is resisted by them, he can use force in order to accomplish the search. That was all that appears to have been done in this case. The confession was not then sought, nor is it contended that it was sought. The accused made the first confession several days later to the sheriff, and it appears in all respects to have been free and voluntary, except for the statement of the accused which is strongly contradicted. Weeks later he made the confession, the substance of which has been de-

tailed above. The conflict in the evidence was a question for the court to decide, and we are satisfied with the determination then made. See Stubbs v. State, 148 Miss. 764, 114 So. 827; Fisher v. State, 150 Miss. 206, 116 So. 746; Loftin v. State, 150 Miss. 228, 116 So. 435.

We are of the opinion that the facts as detailed in this case are not in line nor controlled by the cases, numerous in our reports, where we have held that the record did not show that the confession was freely and voluntarily made.

2. The appellant insists that it was error for the lower court to allow the witness Furnace to testify orally as to the confession heard by him, which confession was at the time taken down in writing and signed by the accused, taking the position that the written confession was the only evidence admissible, and that parol evidence of a confession taken down in writing was incompetent.

On this question the appellant was advised that there was a written confession during the preliminary examination. After the witness Furnace had testified orally as to the confession, and another witness had been heard, the appellant made a motion to exclude the parol evidence of Furnace regarding the confession, on the ground that the confession was in writing. However, if we say in this case, for the sake of the argument, that the point was preserved in due time, what is the particular rule to be applied in such a case?

Appellant cites the case of Wright v. State, 50 Miss. 332, in which case the accused was indicted for murder. He had a preliminary hearing before a justice of the peace, and in that hearing made a voluntary statement which was taken down in writing. On the trial of the case in the circuit court, a witness for the state was permitted to testify as to what the accused said in his voluntary statement in the preliminary hearing before the

committing magistrate over the objection of the appellant, and the admission of the parol testimony was held to be error. In that case, Judge PEYTON, referring to the fact that the justice of the peace was required by the statute to reduce to writing the voluntary confession of the accused, and to certify and send up same to the circuit court, held that the law conclusively presumes that, if anything was taken down in writing, the justice of the peace performed his whole duty by taking down all that was material, and, in such case, the written record of what the prisoner may have said on that occasion only can be received in evidence. In other words, there was presented to the court parol evidence of the written confession, which parol evidence was inadmissible. The same is true of Peter v. State, 4 Smedes & M. 31, wherein it was held that, where the statute required the voluntary statement to be taken down by the justice of the peace in writing, oral evidence as to what the prisoner said on that examination would be secondary and inferior evidence, and ought not to be received.

Let it be remembered that in the instant case we have before us a confession which was extrajudicial and taken down in writing and signed by the accused. The cases cited by the appellant were those in which judicial statements were taken down in writing by an officer authorized, directed, and mandatorily required to commit the voluntary statement to writing. In 22 C. J., p. 1010, section 1290, is this language, which we quote to approve in this behalf: "Although the courts of justices of the peace, magistrates, and trial justices are not technically courts of record, yet where the proceedings and judgments of such courts are required by law to be put in writing, or where a record of such proceedings and judgments is in fact kept, such writing or record, or a properly authenticated transcript thereof, constitutes the best evidence, and parol evidence of the matters contained

therein is excluded unless the writing has been lost or destroyed or is otherwise inaccessible. . . . But where no record was kept parol evidence is admissible."

Perhaps the strongest statement for the appellant is found in 16 C. J., p. 732, section 12, in the following language: "Best and secondary evidence. Except in some jurisdictions, where it is held that the rules governing the admission of primary and secondary evidence do not apply to a confession, it is the rule that, where the confession has been committed to writing, the writing must be produced as the best evidence, unless its absence is accounted for." And the authorities cited to sustain this statement are State v. Eaton, 3 Har. (Del.) 554; Peter v. State, 4 Smedes & M. (12 Miss.) 31; People v. Flores, 17 Porto Rico, 166, 175 (Cit. Cyc.); Williams v. State, 38 Tex. Cr. R. 128, 41 S. W. 645; Bailey v. State, 26 Tex. App. 706, 9 S. W. 270.

The examination of these cases discloses that all of them have reference to judicial statements, or statements made under peculiar statutes, but only in one of them, the case of People v. Flores, 17 Porto Rico, 166, 175, supra, is the proposition stated in the text announced as a rule, and that case cites State v. Eaton, 3 Har. (Del.) 554, which case was dealing with a judicial confession and not an extrajudicial one; so that the rule announced does not seem to be well supported by authority, if indeed there is any support at all.

We are of opinion that parol evidence of a confession which is taken down in writing extrajudicial is not secondary evidence. It may be that the written evidence would be more convincing and of greater weight, but that is not the determining factor. The written confession is primary evidence, and the oral testimony of a witness who recollects a confession is likewise primary evidence. It is not on a parity with contracts and other written documents where the minds of the parties must

meet. Neither is the extrajudicial statement on a parity with those records and statements which are required by law to be kept in writing or reduced to writing. The authentic written contract is the best evidence of the meeting of the minds of the parties and ought not to be changed by parol evidence, except in exceptional circumstances, unnecessary here to repeat; and likewise a statement required to be committed to writing by law becomes authenticated, becomes a record, and is then denominated the best evidence.

We find the rule which we prefer to adopt aptly stated in the case of People v. Giro, 197 N. Y. 152, 90 N. E. 432, 435, wherein on this question that court said:

"The rules governing the admission of primary and secondary evidence to establish a contract have no application to the confession of a crime. When a contract in writing is made there is a meeting of minds, and the written words are conclusively presumed to embrace the final agreement, to the exclusion of all that was said before. In making a confession, however, there is no meeting of minds, and all that the accused voluntarily wrote, or said, or signed, which is material to the charge, is competent against him, because it is his own admission, and against his own interest. It may be in the form of a letter, or of several letters to different persons, or may consist of detached conversations with many people, or it may be a formal confession, or all of these together, yet all are admissible for the prosecution, upon the principle that no one will voluntarily make an admission against himself unless it is true. If there is any exception to this general statement, it is where a confession is made upon a hearing before a magistrate, who reduces it to writing and makes it a part of his return pursuant to the command of a statute, but that is not this case. Greenleaf on Evidence, section 227; Wright v. State, 50 Miss. 332; Rex v. Weller, 2 C. & K. 223; Rex v. Walter, 7 C. & P. 267.

"The oral confession did not differ in substance from the written statement as far as the latter went, but it was more complete. Both confessions were in substantial accord with the testimony of Mr. Staber and his son, and they were also corroborated strongly by the circumstantial evidence in the case."

To the same effect is the case of People v. Spencer, 264 Ill. 124, 106 N. E. 219.

The extrajudicial confession, whether in writing or oral, if freely and voluntarily made, is admissible in evidence, and the oral statement of what the accused said, as well as the written confession signed by him, was clearly alike primary evidence. There was no error on the part of the court in this behalf.

We have examined the whole record, and we find no reversible error therein. The confession in this case is sustained by the evidence. For love of money this defendant joined with others and plotted and conspired to rob these inoffensive old people at a time when he and his companions were the recipients of their kindness and hospitality, taking from them their inheritance left to them by the death of their daughter, and, while the appellant with another boy bound the old man's wife, the other three smothered the old negro man to death. It was a coldly calculated, cruel, and craven murder.

The case is therefore affirmed, and Friday, January 16, 1931, is fixed as the day for the execution of the sentence herein.

Affirmed.