## ELLS *v.* STATE.

(En Banc. March 2, 1931.)

[132 So. 572. No. 29158.]

**Ben Wilkes,** of Greenville, for appellant.

**Eugene B. Ethridge**, Assistant Attorney-General, for the state.

**Cook, J.,** delivered the opinion of the court.

In the circuit court of Washington county, the appellant, Willie Ells, Robert Tyler, and two others were jointly indicted for the murder of King Lee. The appellant and Robert Tyler were arrested, and a motion for a severance and separate trial of these parties was sustained. Robert Tyler was tried, convicted, and sentenced to be hanged, and on appeal to this court the judgment of the court below was affirmed. Tyler v. State (Miss.), 131 So. 417. After the conviction of Robert Tyler, the appellant was tried and convicted, and likewise was sentenced to suffer the death penalty, and from this conviction and sentence this appeal was prosecuted.

The testimony upon which the conviction of the appellant is based is principally that of Charity Lee, widow of the deceased, who testified that she was about sixty years of age. At the time of the killing, the deceased, who was a negro about sixty-three years of age, lived at or near James Crossing in Washington county. According to the testimony of Charity Lee, her husband was not in good health, and after he had gone to bed on the night of the killing, some one knocked at their door; that her husband thereupon opened the door and five young men or boys came in; that she did not know any of them; that they said their car was out of fix, and they desired to get a garage man to fit it. She further testified that the appellant stated that he was going to Leota to visit his uncle, Land Whitney, a man who was well known to her; that they sat around for about two hours; that it was a cold night, and while she held a lamp to light the yard, they cut some wood to replenish the fire; that finally her husband told her to prepare a bed for the boys so they could spend the night, and she went into the front room for that purpose. She further testified that she and her husband had one thousand dollars, the proceeds of insurance on the life of their deceased daughter,

and real estate owned by her during her lifetime; that she was worried about this money which was hidden under the mattress of the bed in the front room, and when she went into the front room to fix the bed, she got this money and concealed it under her own cot. She further testified that her husband had gone to sleep, and that two of the boys went into the front room and blew out the light; that thereupon two of them seized her, and the other three, one of whom was the appellant, jumped on her husband and put a pillow and quilt over his head and mouth, and smothered him to death; that the two who seized her tied her hands and feet, and with a drawn pistol and a threat to kill her, demanded her money; that they also blindfolded her, and she then told them that they could take her money if they would not kill her husband. She further testified that after her husband was dead, they secured the money and went away.

Harry Wright, a taxi driver in the city of Greenville, testified that between seven and eight o'clock on the night of the killing, the appellant applied to him for a taxi, and offered to pay him forty dollars to drive him and others to James Crossing; and after the killing, this fact was reported to the officers. Thereupon the appellant was arrested, and the witness Charity Lee positively identified him as being one of the parties who came to her home, and one of the three who smothered her husband to death. She testified that he was the young man, who stated that he was going to visit his uncle, Land Whitney. She described certain acts and movements of the appellant which called her particular attention to him and caused her to be particularly definite in her identification of him. On cross-examination, the appellant admitted that he had not been employed and had not performed any kind of work for several months, and that he had not earned or saved any money; but there was proof to show that on the day after the killing, the appellant was well supplied with money which he was spending freely in riotous living.

The only ground urged by counsel for appellant for reversal of this cause is that the evidence as to the identity of the appellant is of such a character as to cause grave doubt as to his presence at the scene of, and participation in, the crime charged, and that upon this character of evidence this court should not permit the verdict of the jury to stand. Counsel concedes that the testimony offered by the state, if true, fully supports the verdict of the jury, but the argument is that the witness Charity Lee was old and illiterate, and by reason of the fact that before she was called upon to identify the appellant she was informed by the officers that the appellant had been arrested as a suspect, she was led to believe that he was one of the guilty parties, and further that her identification of the appellant was discredited by reason of the fact that the appellant was alone at the time she first confronted him after his arrest, and she was not required to pick him out from a crowd of others of the same race.

The testimony in the record is to the effect that the witness Charity Lee was about sixty years of age, and there was no testimony that she was infirm or weakened in mind or body, and there is nothing in her testimony to so indicate. No doubt, as stated by counsel, she is illiterate, but her testimony was clear, positive, and to the point, and there is nothing therein to indicate such a want of ordinary intelligence as would justify us in holding that she was unworthy of belief, or that it was insufficient to support the verdict of the jury. The evidence offered by the state, if believed, fully supported the verdict returned, and it was the province of the jury to pass upon the credibility of the witnesses and to determine the weight and worth of the evidence. The instructions granted by the court fully and fairly set forth the law applicable to the facts in evidence, and we find no reversible error in the record.

The judgment of the court below will be affirmed, and Friday, April 10, 1931, is fixed as the date of the execution of the sentence of the court.

Affirmed.