## C. M. JONES v. THE STATE.

No. 15939.   Delivered June 23, 1933.
Rehearing Denied November 15, 1933.
Reported in 64 S. W. (2d) 789.

The opinion states the case.

*W. J. Townsend,* of Lufkin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense is theft; the punishment, 2 years in the penitentiary.

It seems from the testimony that the Shreveport, Houston & Gulf Railroad Company operates between Manning and Huntington, Texas. At the time of the alleged offense, the sum of $1600.00 was being forwarded from Lufkin to Manning, which is designated in the record as the Manning payroll. When the train stopped at Prestige, the car containing the money box in which the $1600 was placed was left on a wye, and, owing to a great deal of switching, it was left there for some 20 or 25

minutes unattended. Upon arriving at Manning it was discovered that the money had been taken from the box. A key had been used to open the box and the key had been broken off in the lock. W. A. Gooden was in charge of the train and among the other employees on said train was Jason Poland, a brakeman. Poland testified that he and the appellant and one Bass entered into a conspiracy to steal this money knowing that it was regularly carried by said railroad. He testified that he was first approached with reference to the matter by the appellant and the appellant told him that he and Bass had been figuring on the job for a long time and they had concluded that the only way the theft could be affected was to get a key to the box. Poland further testified that sometime prior to the theft he borrowed Gooden's keys, among which was the key to the box in which the money was usually carried; that while he had the keys in his possession he took an impression and made a tracing of the key to the box; that he met the appellant and Bass and delivered the impression of the key to them; that after the diagram had been delivered to the appellant he carried it to one Loftin Thomas who made a key to the box. This key was taken back to Poland who tested it and found that it worked perfectly, that it would open the safe or iron box on the train. The key was then delivered to Bass who was to effect the actual robbery or theft. Poland further testified that it was agreed by the parties that the theft was to be consummated at Prestige where the train usually stopped and did some switching. It appears that the part the appellant was to play in the actual robbery besides having the duplicate key made was to station himself on the highway south of Huntington and carry Bass away after he had taken the money. On the morning of the robbery and while the cars were being switched at Prestige, Poland saw Bass leaving the car and going in the direction of the highway towards the place where the appellant was to meet him at Jonesville cemetery about a half a mile north of Prestige, and as the train moved out on its journey, Poland, riding on the head of the train, saw the appellant on the highway in a Chevrolet coupe and he called the attention of the engineer of the train to the fact. The engineer also testified that he saw the appellant at that time. The witness Havard, the fireman on the train, testified that he saw the appellant and Bass at that time; that they were in a Chevrolet coupe belonging to the appellant and the appellant was driving. The undisputed evidence shows that some time after the offense the appellant and the other two parties met and made an equal distribution of the $1600.00.

The appellant testified as a witness in his own behalf that he had heard the testimony of the witness Poland and that it was substantially correct. He admitted that they had entered into the conspiracy and had the key made and that he had agreed to meet Bass and take him away after the theft had been committed and that they afterwards divided the money between the three of them. He also admitted that the trainmen saw him at the time they did but he denied having Bass with him. He testified that he was not present at the time of the theft of the money by Bass from the train but that while he had agreed to take Bass away from the scene of the robbery or to pick him up on the road, he did not go to the Jonesville cemetery as he had promised and wait for Bass, but that he went straight to Huntington to Thomas' garage and no one was with him in the car that morning; that he did not pick up Bass on the road and did not pick up Bass later and take him anywhere, but he admitted that they afterwards met together and divided the money, he getting one-third.

By bill of exception appellant complains of the refusal of the trial court to excuse all the jurors from the panel who had tried the case of the State of Texas v. Alex Conner and the case of the State of Texas v. R. L. Bass, wherein the said Conner and Bass were charged with burglary and wherein the defendant was implicated and upon the trial thereof appeared as a witness and admitted his complicity therein, and that both the said Conner and Bass were convicted upon the testimony of the appellant, upon the grounds that the jurors would be prejudicial to the defendant and would receive other evidence outside the evidence of this trial by reason of having heard the defendant's former testimony on the trial during the present week of court. Appellant requested that the court cause to be stricken the names of all the jurors from the panel who tried the cases of Alex Conner and R. L. Bass. The bill further shows that after the appellant had exhausted all his peremptory challenges, four of the said jurors who tried the case of R. L. Bass and the case of Alex Conner were left remaining upon said list and the appellant was tried, convicted, and sentenced to the penitentiary for a period of two years without the benefit of the suspended sentence pleaded for.

The bill does not disclose the names of the objectionable jurors or show that any of them were challenged for cause or that any biased or prejudicial or disqualified juror was forced upon the appellant, nor is it shown that any injury to appellant occurred by reason of the four jurors being on the jury. It does not appear that any mandatory provisions of our statute

relating to the jury law have been infringed. Appellant having failed to show that he was injured, reversible error is not shown. See Hodge v. State 112 Texas Crim. Rep., 618, 18 S. W. (2d) 167; Bartlett v. State, 82 Texas Crim. Rep., 468, 200 S. W., 839; Johnson v. State, 108 Texas Crim. Rep., 499, 1 S. W. (2d) 896; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W., 884.

We find in the record some objections to the court's charge. It is recited that said objections were duly presented to the trial court before the charge was read to the jury, but such statement is not authenticated by the trial judge nor signed by him. Hence, the objections are not entitled to consideration. See Davis v. State (Texas Crim. App.), 28 S. W. (2d) 794; Fromm v. State, 39 S. W. (2d) 67. In addition to the purported objections to the charge of the court, appellant brings forward in separate bills of exception several written requested instructions on the law of principals. In one of these instructions appellant sought to have the jury instructed in substance that he could not be convicted if the jury believed that he had no connection with the original taking of the money notwithstanding R. L. Bass might have committed the theft pursuant to appellant's advice and found notwithstanding that he (appellant) might have knowingly received some of the stolen money from the said R. L. Bass. Appellant admitted that he had conspired with R. L. Bass and Jason Poland to steal the money belonging to the Manning payroll. Further he admitted that he carried a pattern of the key to the safe in which the money was kept and had a duplicate key made for the purpose of being used in committing the theft. He admitted that he delivered this key to Bass. Further he testified that he agreed to be present near the scene of the theft in an automobile in order that he might carry Bass from the scene after he had stolen the money. He testified that after the theft had been committed, he, Bass, and Poland divided the money. He declared, however, that at the time the theft was committed he was not present near the scene of the theft and was doing nothing in furtherance of the common design, his testimony being to the effect that he had determined not to carry out his part of the agreement to wait near the scene of the theft for the purpose of carrying Bass away after he had committed the offense. Thus, it is seen that appellant's sole defensive theory is found in his testimony to the effect that he had determined not to carry out his agreement to carry Bass away from the scene of the crime, and was some distance away and doing nothing in furtherance of the common design at the time the theft was committed. Touching the issue

raised by appellant's testimony on this point, the trial court instructed the jury as follows:

"You are further charged that if you believe, or have a reasonable doubt thereof, that the defendant, C. M. Jones, at the time of the taking of the money in question by R. L. Bass if you believe that he did so beyond a reasonable doubt, had abandoned the conspiracy, if you believe there was a conspiracy, and did not participate in the commission of the theft as a principal, as hereinbefore defined to you, then you will find the defendant not guilty."

The court gave the statutory definition of principals and made an application of the law to the facts. In view of appellant's testimony it would appear that the defensive charge of the court adequately submitted appellant's affirmative defense. If we should be in error as to this matter, it is observed that no objections to the court's charge properly authenticated are brought forward. Appellant seeks to raise the question of the claimed inadequacy of the charge on principals and the submission of his affirmative defense by bringing forward in separate bills of exception the several special charges heretofore mentioned. As pointed out, the court in his main charge undertook to submit instructions covering the subjects brought forward in appellant's special charges. We understand the rule to be that in the absence of a sufficient objection pointing out the inadequacy of a charge on a particular subject, the requesting of a special instruction, which the trial court could legitimately consider as a substantial repetition of his main charge, cannot take the place of an objection pertinently pointing out the matter complained of. In the present case no reason was assigned in the requested instructions why they were deemed more appropriate than the instructions contained in the general charge prepared by the court. See Bell v. State, 268 S. W., 168, and authorities cited. As stated in Bell v. State, supra, where there is an entire omission from the court's charge of an instruction on a pertinent issue, a corrected special charge upon that issue is sufficient to raise the error in omitting it without a specific objection in writing calling attention to the omission. The rule last mentioned has no application here in view of the fact that the trial judge had submitted instructions in the main charge covering the subjects embraced in appellant's requested instructions.

No reversible error appearing, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In connection with his motion for rehearing appellant brings forward a duly authenticated copy of his exceptions to the charge of the court, showing that same were properly presented to the trial court in correct manner and time. The copy of said exceptions in the transcript, when the case was considered originally, failed to exhibit the certificate of the trial court to the fact that such exceptions had been presented to him and had been by him approved.

There was an exception in rather general terms to the court's charge on principals. Looking to the charge as given, we note that same defined principals in the exact language of article 67, P. C. In Middleton v. State, 86 Texas Crim. Rep., 307, we discussed at length the law of principals, and called attention to the fact that he who is sought to be so held because of his procuring aid, arms, or means to assist, or who is endeavoring to secure the safety or concealment of, the actual committer of the crime at the time it is committed,—need not be personally present. The test in such case seems to be: Were the parties acting together when the crime was committed, each doing some part in the execution of the common purpose and design? Parties evidently might be principals, though physically widely separated at the moment one or more of them strikes the blow, or breaks the house, or takes the loot. In the case before us each of the three persons charged had arranged and agreed to do his assigned part, though only one of them was personally present and acting in the extraction of the property from the money box in which it was placed in the car. All of said parties were notified of the date when the money would be on the train, and the place and time when same should be taken. Poland, on the train when the money was to be carried, was to give an agreed signal indicating that the surroundings were suitable; Bass,—in possession of the key which would unlock the strong box,—was to board the train, unlock the box and get the money; appellant was to be ready and near by to carry Bass and the money to some place of safety. From this record it appears that Poland gave his signal; Bass got the money and carried it away,—as the state contends,—in appellant's car and with his assistance. Appellant admits being a party to the plan and plot; admitted on the witness stand that he got the key for Bass to use; admitted that on the first date set for the execution of the plot, he waited in his car at a place agreed upon for Bass.

to come with the money, but testified that on the date when the money was actually taken he had changed his mind, and was not waiting for Bass, and did not aid him to escape with the money. On this point we note from the testimony of members of the train crew that shortly after the train left the place where it is claimed the money was taken,—the fact of said theft being unknown to any of them save Poland,—as the train was going on its way Poland was in the engine cab with engineer Hays and fireman Havard. Poland testified as a witness that he saw appellant on the highway near the track in his car. Engineer Hays testified that about a mile and a half from Prestige (where the theft took place) he saw appellant in a car on the highway near the railroad track. He said he thought there was some one in the car with appellant. Fireman Havard testified that shortly after leaving Prestige, Poland said "There goes old Claud and Bass." Havard said he looked up and saw appellant and Bass in appellant's car on the highway. These facts justified the jury in concluding that appellant was doing his part in the conspiracy at the time the money was taken, i.e., was waiting somewhere near to convey Bass and the money to a place of safety. The trial court told the jury that if they believed appellant had abandoned the conspiracy, or that he did not take part as a principal in the theft, or if they had a reasonable doubt thereof, they should acquit him. This seems to us to be a presentation of appellant's affirmative defense and to be a charge applicable to the facts.

Appellant also excepted to the failure of the court to tell the jury, as a matter of law, that state witness Thomas was an accomplice. We think he was such accomplice and that such a charge would have been proper. See Opinion in Bass v. State, No. 15981, handed down June 23, 1933. However, we are forbidden to reverse cases for errors or omissions in the charge unless we believe same in some way to have prejudiced the rights of the accused, or to have affected the fairness of his trial. The facts in this case are vastly different from those in the case just cited. Examining the record in this case, we observe that appellant as a witness admitted every material thing sworn to by Mr. Thomas. He said he got Thomas to make the key with which the box was unlocked; told Thomas what they wanted with the key, and also admitted that the stolen money was divided and he got his part of it and let Thomas have a part of this money. This being true, it is manifest that no possible harm could have been done appellant by failure to tell the jury that Thomas was an accomplice as a matter of law. As above stated, all of the material facts appearing in Thomas'

testimony were put in the case without objection by the testimony of appellant.

We do not think the case one on circumstantial evidence. We appreciate the extended motion for rehearing, evidencing labor and research of eminent counsel for appellant. Many of the cases cited by him are reviewed and overruled in Middleton v. State, supra. It could make no difference in arriving at a solution of the question as to whether appellant was doing his part in furnishing aid, or in assisting Bass to escape, whether he went to or waited at the exact spot on the highway upon which the parties had agreed,—though Poland testified that as the train came to Prestige before the robbery he saw appellant's car on the highway at the graveyard where the parties had agreed for it to be. The point decisive would seem to be whether appellant, in pursuance of the plan, furnished the key, and from somewhere conveniently near by did in fact take Bass in his car and aid him to escape, and did take the money away from where it was stolen. See Rowan v. State, 97 Texas Crim. Rep., 130; Slay v. State, 117 Texas Crim. Rep., 519. We see no ground for complaint at the way the case was tried, and find ample support in the testimony for the jury's finding.

Appellant's motion for rehearing will be overruled.

*Overruled.*