### ANTONE SPIVEY V. THE STATE.

No. 22098.  Delivered May 13, 1942.
Rehearing Denied June 26, 1942.
Application for Leave to File Second Motion for Rehearing
Denied October 7, 1942.

The opinion states the case.

*Charles Murphy,* of Houston, for appellant.

*Dan W. Jackson,* Criminal District Attorney, and *Cam Kay,* and *O'Brien Stevens,* Assistant Criminal District Attorneys, all of Houston, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for theft of cigarettes of the value of more than $50.00 from M. M. Stevenson, the date of the offense being alleged as on or about June 15, 1939. Punishment was assessed at 2 years in the penitentiary.

(1) Appellant filed a plea of former jeopardy which was overruled by the trial court without hearing evidence thereon. This action is urged as erroneous and is complained of in bills of exception Nos. 1 and 20. If the plea of former jeopardy was good on its face if supported by proper evidence, the action of the trial court in overruling it without hearing evidence in support of the plea would be error. See Hipple v. State, 80 Tex. Cr. R. 531, 191 S. W. 1150 and Dunn v. State, 92 Tex. Cr. R. 126, 242 S. W. 1049. On the other hand, if conceding the matters set up in the plea to be true, they present no legal issue of jeopardy, the court commits no error in refusing to hear evidence thereon and submit such issue to the jury. Cloninger v. State, 101 Tex. Cr. R. 1, 274 S. W. 596.

Appellant's plea of former jeopardy sets out that in a former indictment he was charged with receiving and concealing the cigarettes in question; that he entered his plea of guilty thereto and was convicted on said plea and given two years in the penitentiary; that he appealed from said judgment of conviction, and the cause was reversed and remanded; that the indictment was dismissed by the State after which this present indictment was returned against him which in one count charged him with theft of the cigarettes and in another count with receiving and concealing them. Appellant seems to base his plea of jeopardy on the proposition that when the State first indicted him for receiving and concealing only it was a carving by the State and that when issue was once joined upon a trial under that indictment it was an acquittal of all other offenses which might have been charged in the former indictment. The proposition just stated is not a sound principle of law. When appellant sought and obtained a reversal of the

judgment of conviction for receiving and concealing no jeopardy could be claimed even against that charge by reason of the trial which resulted in the conviction, because the conviction was set aside on appellant's request. See 12 Tex. Jur., p. 552, Sec. 236 and the many cases cited thereunder. But in the present instance the trial court did not submit the case to the jury on the count charging receiving and concealing but upon theft alone. The latter offense was not charged in the former indictment, hence no jeopardy could have attached because of a prior trial where theft was not charged. The trial court committed no error in disposing of the plea without hearing evidence thereon because the facts alleged in the plea presented no legal issue of jeopardy even though true.

(2) It is appellant's contention that the evidence does not support his conviction as a principal in the offense of theft. This makes it desirable to concisely set out the evidence in order to make understandable the legal questions involved.

Stanley Mosely was a porter at the Walgreen Drug Store in Houston, of which M. M. Stevenson was manager. Mr. Stevenson testified that on June 15, 1939, a case of Chesterfield cigarettes was taken from the store. A case contained 50 cartons. He recovered fifteen cartons which were identified by the numbers on the State Tax Stamp. The other 35 cartons were not recovered. Mosely testified that he could get the key to the stock room where the cases of cigarettes were kept by asking the manager for it; that he had an arrangement with appellant that he would steal the cigarettes from the drug store, and sell them to appellant at 50c per carton; that appellant would send a taxi driver to the store and he (Mosely) would take the cigarettes from the stock room, place them in the taxi and the driver would deliver them to appellant; that appellant sent a driver by the name of Thomas to get the cigarettes; and that appellant paid Thomas for the hauling of them; that on June 15, 1939, witness took a case of Chesterfield cigarettes from the store and delivered them to Thomas who was waiting for them in his taxi. At one place in his evidence Mosely said: "I was to get my money after the cigarettes were sold, Spivey was to sell them first before I got my money—he was to sell them and get his money and then I expected to get my money." In other parts of his testimony it would appear that Mosely would go to appellant's house a few days after cigarettes were delivered to him and demand pay for them regardless of whether

or not appellant had sold them. For instance, witness says: "My plan was to steal the cigarettes from Walgreen and sell them to Spivey for fifty cents a carton." Witness claimed that appellant first mentioned about witness stealing the cigarettes and that the suggestion did not first come from witness.

The State introduced the confession of appellant, the material parts of which are as follows:

" * * * Just before Christmas 1938, I had a conversation with and made arrangements with Stanley Mosely, that I would send a Taxi to Walgreen Drug Store, 1023 Main Street, to pick up a package. The first time Stanley Mosely called for a taxi I sent a taxi driven by James C. Thomas, and he returned to 2309 Gray Avenue with a case of cigarettes, I do not remember the brand. I paid Thomas a dollar ($1.00) for making this trip. About two days later Mosely came to my house and I paid him Twenty-Dollars ($20.00) for these cigarettes. I sold these cigarettes to different people, a carton or two at a time. Along about the month of March 1939, Stanley Mosely called me again and told me to send a taxi to Lamar & Main Streets, and this time the same taxi driver came back with another case of cigarettes, Camel brand, the case had been broken up and was 4 cartons short. We split the difference and I paid him $19.00 for this case of cigarettes, and I paid the taxi driver a Dollar ($1.00) for making this trip. And on last Thursday, June 15, 1939, Mosely called me again and told me to send a taxi to this same address, I sent the same taxi driver and he came back with a case of Chesterfield Cigarettes, and I paid Mosely Twenty Dollars· ($20.00) for them. The Chesterfield cigarettes that I got from Mosely on June 15, 1939 were some of the cigarettes I had in my place today when arrested by officers. The 15 cartons of cigarettes that I sold Thomas Ferrell, was part of the case of Chesterfield Cigarettes that I received from Mosely on June 15, 1939. Thomas Ferrell paid me $15.00 for 15 cartons Chesterfield Cigarettes. * * * I knew it was wrong to do this but I thought I could take a chance and get by. I have known Mosely about 5 or 6 years."

J. C. Thomas, a taxi driver, testified that appellant had sent him on three separate occasions to the Walgreen Drug Store to pick up a package, and had each time paid witness one dollar for the service; that Mosely would bring the package from the stock room of the store and put it in the taxi and witness on each occasion delivered the package to appellant; that one

of said trips was made on the 15th day of June, 1939. Witness testified that there was nothing suspicious about the transactions so far as he was concerned; that it was in broad open daylight. The package delivered by the witness on June 15 was "all sealed up."

Appellant testified upon his trial. He admitted buying cigarettes from Mosely on several occasions and paying him therefor, but denied that he knew they were stolen. He claimed never to have bought at any one time more than 32 cartons, and that he never got an unbroken case either on June 15 or at any other time. He repudiated his confession; denied that he had been warned; denied that he knew what was in the confession, and asserted that he had been forced to sign it.

(3) The State contends that under the facts appellant can be held guilty as a principal upon the theory that where persons enter into a conspiracy by the terms of which one person is to steal the property and deliver it to another of the conspirators who, though not present at the theft, shall sell the same and divide the proceeds, that the party to such conspiracy who converts the property to money and divides the proceeds pursuant to the previous agreement is a principal whether or not he was present at the time the theft was actually committed. If Mosely retained an interest in the cigarettes until they were sold by appellant and his part of the money from the sale was paid over to him by appellant there is no doubt of the soundness of the State's position. However, if Mosely sold to appellant the stolen cigarettes at a specified price which he was to receive from appellant, and had no interest in what became of the cigarettes after he delivered them to appellant, the latter would not be a principal in the theft. See Rountree v. State, 140 Tex. Cr. R. 188, 143 S. W. (2d) 942, and Rountree v. State, 140 Tex. Cr. R. 421, 145 S. W. (2d) 895. The principles of law are discussed in Smith v. Smith, 21 Tex. Cr. App. 107, 17 S. W. 552; Kolb v. State, 88 Tex. Cr. R. 593, 228 S. W. 210; Burow v. State, 85 Tex. Cr. R. 133, 210 S. W. 805; Byrd v. State, 117 Tex. Cr. R. 489, 38 S. W. (2d) 332; McInnis v. State, 122 Tex. Cr. R. 128, 54 S. W. (2d) 96; Coy v. State, 131 Tex. Cr. R. 489; 100 S. W. (2d) 1016; Miller v. State, 133 Tex. Cr. R. 53, 105 S. W. (2d) 1097. Reference to the testimony heretofore related will show that the particular point here involved was not very clearly developed, and leaves it somewhat uncertain whether Mosely sold the stolen cigarettes to appellant for an

agreed price which appellant was to pay regardless of what he received for the cigarettes, or whether Mosely retained an interest in them until they were sold by appellant and part of the proceeds turned over to Mosely. We do not discuss this phase of the case further because upon another theory it appears clearly that appellant was a principal in the theft.

(4) If appellant had entered into an agreement with Mosely whereby the latter was to take cigarettes from his employer, and appellant was to furnish the means to convey the cigarettes away from the store where they were stolen, and if appellant had gone to the store in a car and waited until Mosely secured the cigarettes and placed them in appellant's car, and he had taken them away he would have been a principal because he would have been aiding in the consummation of the theft. Arts. 65, 66 and 67 P. C., Jones v. State, 124 Tex. Cr. R. 607, 64 S. W. (2d) 789; Rowan v. State, 97 Tex. Cr. 130, 260 S. W. 591 and cases therein cited; Slay v. State, 117 Tex. Cr. R. 519, 33 S. W. (2d) 459. It is true appellant was not present in person with the taxi to haul the cigarettes away. Art. 68 P. C. so far as here applicable reads:

"If anyone by employing a child or other person who cannot be punished to commit an offense * * * the offender by the use of such indirect means becomes a principal."

In Sec. 2428, Branch's Ann. Tex. P. C. is found stated the conclusions of this court in application of said Art. 68, as follows:

"If defendant fraudulently procured a person innocent of any fraudulent intent to take the property for him, it is a taking through an innocent agent, and a taking by an innocent agent is a taking by defendant. In a legal sense, defendant was present when the act was done if he fraudulently caused that act to be done by an innocent agent although in fact he was in a different county or state. Madison v. State, 16 Texas Crim. App. 442. Doss v. State, 21 Tex. Crim. App. 509; 2 S. W. 814. Dale v. State, 32 Texas Crim. Rep. 78; 22 S. W. 49. Sikes v. State, 28 S. W. 688. Lane v. State, 41 Texas Crim. Rep. 559; 55 S. W. 831. Walls v. State, 43 Texas Crim. Rep. 70; 63 S. W. 328. Jessup v. State, 44 Texas Crim. Rep. 83; 68 S. W. 988. Farris v. State, 55 Texas Crim. Rep. 481; 117 S. W. 798."

Many of the cases cited are reviewed in Houston v. State, 98 Tex. Cr. R. 280, 265 S. W. 585 and the principle approved. See also Strang v. State, 32 Tex. Cr. R. 219, 22 S. W. 680.

The facts here show that appellant by previous agreement and understanding with Mosely sent Thomas—the taxi driver—to the store to take over from Mosely the cigarettes which Thomas delivered to appellant. Thomas was innocent of any participation in the fraudulent intent of Mosely and appellant. He (Thomas) was directed by appellant to go to the store and pick up a "package." He had no knowledge that the package contained stolen property and the circumstances were not such as to put him upon notice that they were. He was the innocent agent of appellant in doing appellant's part in the theft, and appellant was just as guilty as though personally present and hauling the cigarettes away.

(5) In a supplemental transcript called page 11½ appears what purports to be an exception to the court's charge for an alleged failure to apply the law of principals and suggesting, as we understand the objection, that the court should tell the jury that Mosely and appellant must have acted together in the commission of the offense. Our attention is directed to the fact that the purported objection is signed by appellant's attorney, but is not authenticated by the trial judge showing that it was presented to him. Neither is complaint brought forward by separate bill of exception. Only in one manner or the other may the complaint be brought forward. 4 Tex. Jur., pp. 384, 385, Sec. 259, and Sec. 160, pp. 221 and 222, and cases cited thereunder. We note that the court did tell the jury that if they found "from the evidence beyond a reasonable doubt that the defendant, Antone Spivey, acting together with Stanley Mosley as principal as herein defined, * * * committed the offense alleged you will find him guilty of theft as charged in the indictment." The court's definition of principals is in some respects erroneous but we find no objection thereto. Somewhat the same situation appears in Middleton v. State, 86 Tex. Cr. R. 307, 217 S. W. 1046. Even had the error in the charge been properly objected to we doubt if same would have presented reversible error in view of the fact that the evidence for the State shows that appellant through his innocent agent, Thomas, was present and acting with Mosely in the commission of the offense.

(6) There appears in the record two special charges. They are signed by appellant's counsel and are marked "refused" over the trial judge's signature. Following this appears a statement over the attorney's signature only that exception was reserved to the refusal of the charges. This is not sufficient. An exception to the refusal of a special charge, like any other exception, must be verified by the trial judge. Cunningham v. State, 97 Tex. Cr. R. 624, 262 S. W. 491; Langford v. State, 128 Tex. Cr. R. 615, 82 S. W. (2d) 969; 4 Tex. Jur. Sec. 195, p. 280, and authorities cited under Note 4.

(7) Complaint is brought forward in bill of exception number 5 because Mosely was permitted over appellant's objection to testify about appellant having sent Thomas after cigarettes on another occasion prior to the transaction on June 15, 1939, on the ground that it was another and distinct offense than the one for which appellant was on trial. It was necessary to establish the relations between appellant and Mosely and the method employed by them in stealing and disposing of the cigarettes. The evidence objected to seems pertinent to the development of the case generally, and was relevant as throwing light on appellant's claim that he was innocent of any wrongdoing regarding the cigarettes.

(8) Bills of exception numbers 3, 15, and 16 have been examined. None is thought to present error.

(9) Bills of exception numbers 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, 18, 19 and 21 were refused by the court because thought by him to be incorrect, or not sufficiently full to properly present the questions involved. Appellant declined to correct his bills or to accept qualifications thereto; whereupon, the court returned the bills to counsel for appellant and prepared and filed his own bills in lieu thereof. No bystanders' bills are found challenging the correctness of the bills as prepared by the court. An examination of said bills reveals no error, and it is not thought necessary to discuss any of them in detail. Some of the bills relate to the introduction in evidence of the result of a search of appellant's house over the objection that the house was searched without a search warrant, which search resulted in finding 15 cartons of cigarettes which had been taken from the drug store. The evidence shows that a search warrant had been issued and was in possession of some of the officers present, although not in the hands of the particular officer being

examined when the objection was interposed. Furthermore, appellant himself testified that the 15 cartons of cigarettes were found in his house, and were a part of those he bought from Mosely. This evidence from appellant would have relieved the case from error in the particular mentioned even had the search been illegal. See Schaefer v. State, 121 Tex. Cr. R. 220, 53 S. W. (2d) 302, and cases there cited. Other bills of exception above referred to complain because the court admitted in evidence appellant's confession over objection that the same was not voluntary. Appellant by his evidence made an issue on this point which issue was submitted to the jury, and no objection is found to the manner of its submission. This procedure was correct.

The judgment is affirmed.

### ON MOTION FOR REHEARING.

DAVIDSON, Judge.

In his motion for rehearing, supported by oral argument, appellant takes the position that his bills of exception which were refused approval by the trial court, and in lieu of which the trial court prepared and filed his own bills of exception— in which appellant's bills of exception so refused by him were set out and incorporated—should, nevertheless, be considered by this court.

For a bill of exception to be such in fact, it is necessary that it be approved by the trial court, or that it be established as a bystanders' bill, without the trial court's approval. This court is without authority to give consideration to purported bills of exception not coming within such classifications. Chappell v. State, 122 S. W. (2d) 1068, 136 Tex. Cr. R. 14.

Appellant insists that this case was not tried and was not submitted to the jury upon the theory that he was a principal to the theft of the cigarettes by reason of his having been present and having participated therein by and through an innocent agent, and that the conviction should not be sustained by us upon that theory. The case was submitted to the jury generally upon the law of principals. The jury was instructed that appellant's guilt depended upon whether he acted with Mosely in the commission of the theft as a principal.

If appellant desired a more definite or specific application of the law of principals, he was under the burden of making such fact known to the trial court by a proper exception to the charge or by a special requested charge. As pointed out in our original opinion, the record before us fails to reflect that this was done. It is therefore made to appear that appellant was tried under the law of principals, and that the facts warranted his conviction under such law.

We have again examined the facts and remain of the conclusion originally expressed.

Appellant's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON APPLICATION TO FILE SECOND MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The judgment of conviction was affirmed on May 13, 1942; motion for rehearing was overruled on June 28, 1942. The Court of Criminal Appeals adjourned for the term on June 27, 1942. On July 7, 1942, a second motion for rehearing reached the Clerk of the Court. No provision is made by statute for the filing or consideration of a second motion for rehearing, but the court has in a few instances taken cognizance of them on the principle that the court has control of its judgments during the term at which it was rendered. However, the court loses jurisdiction after adjournment for the term. See Silver v. State, 100 Tex. Cr. R. 512, 8 S. W. (2d) 144, 9 S. W. (2d) 358; McNeese v. State, 121 Tex. Cr. R. 421, 52 S. W. (2d) 1049; Burleson v. State, 131 Tex. Cr. R. 76, 96 S. W. (2d) 785; Hill v. State, 133 Tex. Cr. R. 92, 108 S. W. (2d) 912; Ralston v. State, 133 Tex. Cr. R. 100, 109 S. W. (2d) 185; Rainwater v. State, 140 Tex. Cr. R. 88, 143 S. W. (2d) 958.

Under the consistent holding of the court the request for leave to file second motion for rehearing must be denied.