Oscar CARRILLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 58109.

Court of Criminal Appeals of Texas, Panel No. 3.

Dec. 19, 1979.

Randolph L. Schaffer, Jr., Houston, for appellant.

Alger Kendall, Dist. Atty., Jourdanton, F. A. Cerda, Dist. Atty., Hebbronville, John L. Hill, Atty. Gen., Gerald C. Carruth, Max P. Flusche, Jr. and Catherine E. Greene, Asst. Attys. Gen., Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, PHILLIPS and DALLY, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for felony theft under the former penal code. The punishment is imprisonment for seven years, probated.

Appellant contends that (1) the evidence is insufficient to corroborate an accomplice witness, to establish appellant's guilt as a principal, and to prove ownership of the stolen property as alleged in the indictment; (2) appellant's cross-examination of State witnesses to show their bias and motive for testifying against him was improperly restricted; (3) the trial court gave a conflicting and irreconcilable charge on the law of principals and refused to give an affirmative charge on the converse of the law of principals; (4) the charge permitted a conviction on a theory without support in the evidence; (5) the trial court refused to give affirmative instructions on two defensive theories and to instruct the jury that two State witnesses were accomplice witnesses as a matter of law; (6) improper evidence was admitted over objection; (7) the trial court commented on the weight of the evidence; (8) the prosecutor engaged in improper jury argument; (9) the trial court refused to permit appellant to timely make his bills of exception; (10) evidence beneficial to the defense was stolen from appel-

lant's office by agents of the State; and (11) appellant's motion to quash the indictment should have been granted.

The indictment alleges that on or about May 4, 1972, appellant

"unlawfully and fraudulently [took] two thousand five hundred one (2501) Postage meter stamps numbered 561541 of the value of over two hundred dollars ($200.00), the same then and there being the corporeal personal property of and belonging to Ken Bercaw, from the possession of the said Ken Bercaw, without the consent of the said Ken Bercaw, and with the intent then and there to deprive the said Ken Bercaw of the value of the same and to appropriate it to the use and benefit of himself, the said Oscar Carrillo . . . . ."

At the time in question, appellant was a member of the Texas House of Representatives, and was a candidate for the Texas Senate from the 21st senatorial district. The postage meter described in the indictment belonged to the Benavides Independent School District (BISD). It was the State's contention that appellant arranged to have some of his campaign materials mailed at the expense of the BISD by having it run through the school district's postage meter.

The postage meter was located in what was referred to at the trial as the BISD tax office in Benavides. Rodolfo Couling was the BISD tax assessor-collector, and was in charge of the tax office. Couling testified that in April, 1972, appellant came to the tax office and told him that he wanted the tax office to furnish postage to appellant's campaign. After Couling agreed to provide the requested assistance, appellant brought in several boxes of envelopes and pamphlets. Couling testified that appellant instructed him to address the envelopes, stuff them with the pamphlets, and run them through the postage meter. One or two days later, more of appellant's campaign literature was delivered to the tax office, but Couling could not remember who made this delivery.

Couling testified that he instructed the tax office employees to type addresses on the envelopes from the tax rolls, a process which took approximately three weeks. After the envelopes were addressed, Couling and Grace Bridges, another BISD employee, ran them through the postage meter. Couling testified that appellant came to the tax office several times while the envelopes were being processed to see how things were going, but that appellant had not been present when the envelopes were run through the postage meter. Appellant did not reimburse Couling for the postage used to mail the envelopes.

Several BISD tax office employees testified that they had addressed appellant's campaign envelopes and stuffed them with pamphlets on school time. Gordon Ross, the superintendent of the BISD at the time in question, testified that he saw this work being done. Mauricio Gonzalez, the Benavides postmaster, testified that thousands of envelopes bearing appellant's photograph and which had been stamped by the BISD postage meter were mailed in May, 1972. While none of the witnesses could place an exact figure on the number of envelopes which were processed through the BISD tax office, the estimates were between 5,000 and 10,000. At eight cents per letter, which the record reflects was the first class rate in 1972, the cost to the BISD was between $400 and $800. Gonzalez testified that the record book maintained for the BISD postage meter, which was in evidence, showed that $800 of postage had been used during the first week of May, 1972. Luis Elizondo and M. K. Bercaw, Jr., both members of the BISD board of trustees in 1972, testified that the board never authorized the use of the school's postage meter for appellant's campaign.

The trial court instructed the jury that Couling was an accomplice witness as a matter of law. A conviction cannot be had upon the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows

the commission of the offense. Art. 38.14, V.A.C.C.P. While there is ample evidence in the record to corroborate Couling's testimony that appellant's campaign material was addressed, stamped, and mailed by BISD employees at BISD expense, only two other witnesses gave testimony connecting appellant to the theft. Appellant argues that the testimony of these witnesses may not be considered in corroboration of Couling because both were accomplice witnesses as a matter of law. See *Caraway v. State*, 550 S.W.2d 699 (Tex.Cr.App.1977); *Chapman v. State*, 470 S.W.2d 656 (Tex.Cr.App. 1971).

The first of these witnesses was Ruben Chapa, who testified that he had been employed by appellant to work in his Laredo campaign office. Chapa testified that in late April, 1972, appellant gave him a box of envelopes which had been addressed, stuffed, and sealed, and told him to take them to Couling, who would "know what to do with them." Chapa delivered the envelopes to Couling at the BISD tax office, and later watched him run the envelopes through the postage meter. Chapa also testified that on another occasion he saw Couling and Bridges run campaign envelopes through the postage meter.

The second witness was Brian Taylor, who in 1972 was superintendent of the San Diego Independent School District (SDISD). He testified that in April of that year appellant asked him if he would mail some of appellant's campaign literature. Taylor testified that during this conversation appellant told him that the BISD was providing similar assistance to the campaign. Taylor agreed to mail appellant's material, and approximately 2,500 campaign envelopes were subsequently delivered to him at his office. Taylor hired several SDISD students to address these envelopes, which were then stuffed with appellant's campaign pamphlets and mailed with stamps purchased by the SDISD. The SDISD was not reimbursed for these stamps.

■ The trial court submitted the issue of whether Chapa was an accomplice as a question of fact for the jury to decide.

Where there is a doubt whether a witness is an accomplice, submitting the issue to the jury is sufficient even though the evidence seems to preponderate in favor of the conclusion that the witness is an accomplice as a matter of law. *Colunga v. State*, 527 S.W.2d 285 (Tex.Cr.App.1975); *Ward v. State*, 520 S.W.2d 395 (Tex.Cr.App.1975); *Jackson v. State*, 516 S.W.2d 167 (Tex.Cr. App.1974). Chapa admitted that he delivered envelopes to Couling and that he saw Couling and Bridges run envelopes through the school district's postage meter. Couling testified, but Chapa denied, that Chapa delivered some of the campaign envelopes to the post office. But there is no evidence that Chapa knew that the postage meter was being used without the consent of the school board or that the district was not going to be reimbursed for the postage. We hold that the trial court did not err in submitting the issue of whether Chapa was an accomplice witness as a fact question for the jury. See and compare *Ward v. State*, supra; *Zitterich v. State*, 502 S.W.2d 144 (Tex.Cr.App.1973); *Allen v. State*, 461 S.W.2d 622 (Tex.Cr.App.1970).

■ The trial court did not instruct the jury that Taylor was an accomplice witness as a matter of law, nor did the court submit the issue as a question of fact. An accomplice witness is someone who has participated with another before, during or after the commission of a crime. *Ferguson v. State*, 573 S.W.2d 516 (Tex.Cr.App.1978); *Jackson v. State*, 552 S.W.2d 798 (Tex.Cr. App.1977); *Singletary v. State*, 509 S.W.2d 572 (Tex.Cr.App.1974). One is not an accomplice witness who cannot be prosecuted for the offense with which the accused is charged. *Villarreal v. State*, 576 S.W.2d 51 (Tex.Cr.App.1978); *Easter v. State*, 536 S.W.2d 223 (Tex.Cr.App.1976); *Morgan v. State*, 171 Tex.Cr.R. 187, 346 S.W.2d 116 (1961); *Silba v. State*, 161 Tex.Cr.R. 135, 275 S.W.2d 108 (1954); *Liegois v. State*, 73 Tex.Cr.R. 142, 164 S.W. 382 (1914). A witness is not deemed an accomplice witness because he knew of the crime but failed to disclose of or even concealed it. *Easter v. State*, supra; *Gausman v. State*, 478 S.W.2d

458 (Tex.Cr.App.1972). While the record in the instant case may support the conclusion that Taylor knew of the theft from the BISD, there is no evidence that he took part in the planning or commission of this offense. Taylor admitted that he stole postage stamps from the SDISD for use in appellant's campaign, but a witness' complicity with the accused in the commission of another offense does not make his testimony that of an accomplice to the offense for which the accused is on trial. *Caraway v. State*, supra; *Easter v. State*, supra. No error is presented.

Chapa and Taylor were not accomplice witnesses as a matter of law, and their testimony may be considered in corroboration of the accomplice witness Couling. To test the sufficiency of the corroboration of an accomplice witness, one must eliminate from consideration the evidence of the accomplice witness, and then examine the evidence of the other witnesses to ascertain if it is of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not. *Brown v. State*, 561 S.W.2d 484 (Tex.Cr.App.1978); *Caraway v. State*, supra; *Etheredge v. State*, 542 S.W.2d 148 (Tex.Cr.App.1976); *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1972). The corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Lyman v. State*, 540 S.W.2d 711 (Tex.Cr.App. 1976); *Bentley v. State*, 520 S.W.2d 390 (Tex.Cr.App.1975); *Black v. State*, 513 S.W.2d 569 (Tex.Cr.App.1974); *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App.1971). The corroboration need only make the accomplice's testimony more likely than not. *James v. State*, 538 S.W.2d 414 (Tex.Cr. App.1976); *Bentley v. State*, supra; *Warren v. State*, 514 S.W.2d 458 (Tex.Cr.App. 1974).

Neither Chapa nor Taylor was able to corroborate Couling's testimony that appellant had told Couling to use the BISD postage meter to mail campaign material and had personally delivered some of this material to the tax office. However, it is not necessary that the accomplice witness be corroborated on all his testimony. *Edwards v. State*, 427 S.W.2d 629 (Tex.Cr. App. 1968); *White v. State*, 129 Tex.Cr.R. 59, 84 S.W.2d 465 (1935). Chapa testified that appellant ordered him to deliver a box of envelopes to Couling, and told him that Couling would know what to do with them. After Chapa delivered the envelopes, Couling ran them through the postage meter. Taylor testified that appellant told him that the BISD was providing postage to mail appellant's campaign material, and asked him if he would do the same. We hold that the testimony of Chapa and Taylor is sufficient to corroborate Couling with regard to appellant's involvement in the charged offense. Their testimony, and that of the other State witnesses, is incriminating, tends to connect appellant to the commission of the offense, and makes Couling's testimony more likely than not.

Appellant contends that the evidence is insufficient to support his conviction as a principal to the theft. He argues that while the evidence may show that he advised or encouraged Couling to commit the theft, there is no evidence that appellant was either present or acting in furtherance of the offense at the time the envelopes were run through the postage meter. Thus, appellant asserts that the evidence is, at most, sufficient only to convict him as an accomplice to the theft.

Under the law of principals set forth in Arts. 65–69, V.A.P.C. (1925), in effect when the charged offense was committed, if the defendant on trial was not present when the offense was committed and was doing nothing in aid of the common design when the offense was committed, he would not, as a general rule, be a principal although the facts might show him to be an accomplice, a receiver of stolen property, or both. 2 Branch's Ann.P.C. Sec. 710 (2d ed., 1956). The application of this general rule to the offense of theft may be illustrated by the following example:

A induces B to steal certain property, and supplies B with arms or equipment need-

ed for the task. At the time B takes the property, A is neither present nor acting in furtherance of the theft. B delivers the property to A, receiving payment. A keeps or disposes of the property as he sees fit.

Under these facts, A would be an accomplice or a receiver of stolen goods, but not a principal to the theft. See *Rountree v. State*, 140 Tex.Cr.R. 188, 143 S.W.2d 942 (Tex.Cr.App.1940); *Avila v. State*, 99 Tex. Cr.R. 179, 268 S.W. 754 (Tex.Cr.App.1925); *Burow v. State*, 85 Tex.Cr.R. 133, 210 S.W. 805 (1919).

██ If, however, A and B in the example above agreed that B would steal the property and deliver it to A, who in turn would sell the property and divide the proceeds with B, A would be a principal to the theft even though he was neither present at the taking of the property nor acting in furtherance of the taking of the property at the time it was taken. *Shirley v. State*, 501 S.W.2d 635 (Tex.Cr.App.1973); *Johnson v. State*, 151 Tex.Cr.R. 192, 206 S.W.2d 605 (1947); *McInnis v. State*, 122 Tex.Cr.R. 128, 54 S.W.2d 96 (1932). Thus, the failure of the evidence to show that appellant was either present or acting in furtherance of the offense at the times Couling ran the envelopes through the postage meter does not necessarily mean that the evidence cannot support appellant's conviction as a principal. The answer to this issue lies in an analysis of the nature of the agreement between appellant and Couling and of appellant's role in the criminal enterprise.

*Holt v. State*, 144 Tex.Cr.R. 62, 160 S.W.2d 944 (1942), was a prosecution for theft by false pretext. The evidence showed an elaborate scheme by which the defendant and several other parties obtained the confidence of the victims and lured them from their home in Tyler County to Beaumont, where the defendant's confederates convinced the victims to invest $20,000 in a nonexistent business scheme. This Court observed:

"Two views may be taken of the case. One would narrow the commission of the crime to the very minute the money was delivered by Goolsbee to Ramey and the others. We think the correct view is that the time of the crime of theft by false pretext extended from the beginning of the transactions when appellant first visited the Goolsbees until their loot was divided . . .. It follows from the facts of the case that appellant was personally present on several occasions . . .." 160 S.W.2d at 946.

The defendant's conviction as a principal was affirmed even though he had not been present when the money changed hands.

*Parnell v. State*, 170 Tex.Cr.R. 30, 339 S.W.2d 49 (1959), was a prosecution for embezzlement. The evidence revealed that the defendant and his coparties used their authority as members of the executive committee of an insurance company to have money belonging to the corporation applied to the payment of their personal obligations. A number of meetings and transactions took place in the course of this scheme; the defendant was present at some, but not all, of them. This Court affirmed the defendant's conviction as a principal.

*McClelland v. State*, 373 S.W.2d 674 (Tex. Cr.App.1963), was a prosecution for conversion of an estate. The evidence showed that the defendant, who was the Judge of the Harris County Probate Court, entered an order directing that a fee of $10,000 be paid to the administrator of an estate. At the same time, he instructed the administrator to deposit $5,000 in the bank account of a corporation controlled by the defendant. Although the defendant was not present when the administrator withdrew the $10,000 from the estate's bank account, this Court held that he could be convicted as a principal, noting that he had set the unlawful scheme in motion and had entered the order under color of which the administrator had acted.

In the instant case, the evidence is sufficient to establish that appellant and Couling entered into an agreement under which postage belonging to the BISD would be converted to the use of appellant. There were two steps essential to the commission

of this theft: (1) the delivery of appellant's campaign envelopes to the tax office and (2) the passage of the envelopes through the postage meter. While the possession of the postage passed from the BISD to appellant when Couling ran the envelopes through the meter, this transfer could not have taken place had not appellant brought the envelopes to the tax office.

■ The reasoning applied by this Court in *Holt, Parnell,* and *McClelland* is equally applicable in this case. As did the defendants in those cases, appellant did more than merely induce or encourage another party to commit theft. Appellant actually carried out an essential step in the accomplishment of the criminal scheme. Without the envelopes, Couling could not have converted the postage to the use of appellant's campaign. The evidence establishes that appellant personally delivered most of the envelopes to Couling. The evidence is sufficient to sustain appellant's conviction as a principal to the theft.

There is other evidence by which this conviction may be sustained. Chapa testified that on appellant's instruction he delivered a box of addressed envelopes to Couling, who ran the envelopes through the meter in Chapa's presence. Art. 68, V.A. P.C. (1925), provided that:

"If anyone by employing a child or other person who cannot be punished to commit an offense, or by any . . . indirect means cause another to receive injury to his person or property, the offender by the use of such indirect means becomes a principal."

As we have previously noted, there is no evidence in the record before us that Chapa was aware of the felonious intent of appellant and Couling. In the absence of such knowledge, Chapa could not be punished for having delivered the envelopes to Couling. In a legal sense, appellant was present when he acted through Chapa, an innocent agent, to deliver envelopes to Couling to be run through the postage meter. See *Spivey v. State,* 144 Tex.Cr.R. 432, 164 S.W.2d 668 (1942) and cases therein cited.

In his final challenge to the sufficiency of the evidence, appellant contends that the evidence does not show that the stolen postage was owned by Ken Bercaw, as alleged in the indictment. At the trial, a witness who gave his name as M. K. Bercaw, Jr., testified that he was a member of the BISD board of trustees in 1972 and that the board never authorized the use of the postage meter for appellant's campaign. Appellant argues that there is no evidence that M. K. Bercaw, Jr., is the same person as Ken Bercaw.

■ The record reflects that when the prosecuting attorney called the witness in question to the stand he referred to him as "Ken Bercaw." The record also reflects several references by defense counsel to "Ken Bercaw." Appellant did not raise this variance between the pleading and the proof in the trial court, nor does he suggest in his brief that he was misled to his prejudice. The trial court instructed the jury that if they had a reasonable doubt that Ken Bercaw had the actual care, control, and management, individually or jointly with others, of the stolen property at the time of the alleged offense they were to find appellant not guilty. We hold that, under the circumstances, the variance between "Ken Bercaw" and "M. K. Bercaw" is not material. See *Clark v. State,* 449 S.W.2d 231 (Tex.Cr.App.1969); *Crye v. State,* 391 S.W.2d 57 (Tex.Cr.App.1965); *Jones v. State,* 50 Tex.Cr.R. 210, 96 S.W. 29 (Tex.Cr.App.1906); *McAfee v. State,* 14 Tex.App. 668 (1883). The suffix "Jr." is not a part of a name and is immaterial. 40 Tex.Jur.2d, Names, Sec. 10 (rev.ed.1976); 55 Tex.Jur.2d, Theft, Sec. 165 (1964). This ground of error is overruled.

Appellant contends that the trial court erroneously restricted his cross-examination of Chapa, Ross and Taylor with regard to their bias, interest, and motive for testifying against him. Before discussing the merits of this contention, a review of the applicable law is warranted.

■ Great latitude should be allowed the accused to show a witness' bias or motive to falsify his testimony. *Cloud v.*

*State,* 567 S.W.2d 801 (Tex.Cr.App.1978); *Blair v. State,* 511 S.W.2d 277 (Tex.Cr.App. 1974); *Seal v. State,* 496 S.W.2d 621 (Tex. Cr.App.1973); *Hooper v. State,* 494 S.W.2d 846 (Tex.Cr.App.1973); *Burkhalter v. State,* 493 S.W.2d 214 (Tex.Cr.App.1973); *Kohler v. State,* 490 S.W.2d 592 (Tex.Cr.App.1973); *Wood v. State,* 486 S.W.2d 359 (Tex.Cr.App. 1972). However, trial courts have considerable discretion as to how and when bias may be proved and as to what collateral evidence is material for that purpose. *Cloud v. State,* supra; *United States v. Robinson,* 174 U.S.App.D.C. 224, 530 F.2d 1076 (D.C. Cir. 1976); *United States v. McCann,* 465 F.2d 147 (5th Cir. 1972); *Nutter v. United States,* 412 F.2d 178 (9th Cir. 1969), cert. denied, 397 U.S. 927, 90 S.Ct. 935, 25 L.Ed.2d 107; *United States v. Higgins,* 362 F.2d 462 (7th Cir. 1966), cert. denied, 385 U.S. 945, 87 S.Ct. 316, 17 L.Ed.2d 224; cf. *Aetna Insurance Co. v. Paddick,* 301 F.2d 807 (5th Cir. 1962).

■■■ The extent to which a witness may be cross-examined for the purpose of showing bias on a collateral matter rests on the sound discretion of the trial judge. *Howell v. American Livestock Insurance Co.,* 483 F.2d 1354 (5th Cir. 1973); *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1930). The trial judge must balance the probative value of the evidence sought to be introduced against the risk its admission may entail. The potential risks include the possibility of undue prejudice, embarrassment, or harassment to either a witness or a party, the possibility of misleading or confusing the jury, and the possibility of undue delay or waste of time. *Howell v. American Livestock Insurance Co.,* supra; *United States v. 412.93 Acres of Land,* 455 F.2d 1242 (3d Cir. 1972). Cf. Rules 403 and 608(b), Federal Rules of Evidence.

■■■ In general, unadjudicated criminal offenses may not be used to impeach a witness in a criminal case. Art. 38.29, V.A. C.C.P. However, evidence of pending charges against a witness is admissible under certain circumstances for the limited purpose of showing bias, prejudice, interest, and motive of the witness in testifying as

he did. *Randle v. State,* 565 S.W.2d 927 (Tex.Cr.App.1978); *Castro v. State,* 562 S.W.2d 252 (Tex.Cr.App.1978); *Evans v. State,* 519 S.W.2d 868 (Tex.Cr.App.1975); *Kissinger v. State,* 126 Tex.Cr.R. 182, 70 S.W.2d 740 (1934). In another case, this Court held that a trial court erred by refusing to permit the defendant to question a key witness on a bill of exception with regard to three prior arrests even though the charges had been dismissed. The Court stated that the defendant should have been permitted to explore the possibility that the dismissal of the charges was a quid pro quo for the witness' testimony. *Simmons v. State,* 548 S.W.2d 386 (Tex.Cr.App.1977).

In the instant case, appellant sought to impeach the three witnesses with evidence of alleged offenses committed by them and known to the State for which no charges had ever been brought. The issue presented is whether the exclusion of this evidence constituted an abuse of the trial court's discretion.

The disallowed impeachment of Chapa concerned the witness' purchase of stolen rifles. On appellant's bill of exception, Chapa testified that he had knowingly purchased sixteen stolen rifles in 1974. He went on to testify that he had subsequently been questioned by the police about the rifles, and as a result had turned the rifles over to the authorities. Chapa stated that no charges had been brought against him for having purchased the stolen rifles, and denied that his testimony against appellant was prompted by an agreement with the State to avoid prosecution. He acknowledged that at the time of appellant's trial he was still subject to prosecution for receiving stolen property because the statute of limitations had not run.

The disallowed impeachment of Ross concerned his alleged misuse of property owned by the BISD. On appellant's bill of exception, Ross testified that while he was the superintendent of the BISD he had permitted his daughter to use a school-owned automobile for her personal transportation while at college. He also testified that although he had been dismissed from his

job as superintendent in 1975, he still had in his possession at the time of the trial (September, 1976) a Jeep, tractor, mower, and automobile owned by the school district. Although he had been questioned by members of the Attorney General's office and by Texas Rangers concerning his continued possession of school property, Ross stated that he had not been indicted or informed that he was subject to prosecution in this regard.

Insofar as the impeachment of Chapa and Ross is concerned, this case is distinguishable from *Simmons v. State*, supra, in two respects. First, no criminal charges had been filed against Chapa and Ross. Second, appellant was permitted to fully explore in his bills of exception the possibility that no charges had been brought against the witnesses as a quid pro quo for their testimony. This exploration was fruitless; there is no evidence in the record of any agreement between the State and either Chapa or Ross. In essence, appellant was asking the trial court to permit him to impeach Chapa and Ross on the basis of speculation as to pressure the two witnesses might have felt to testify favorably to the State.

█ Speculation about a witness' ulterior motives for testifying against the defendant is of little probative value as impeachment. Furthermore, such speculation invites harassment of the witness, can lead to delays of the trial as the motives of each witness are explored by the parties, and can confuse the issues and the jury.

The exclusion of the proffered testimony must also be considered in light of the impeachment of Chapa and Ross which was permitted by the trial court. During his cross-examination before the jury, Chapa testified that he felt appellant was responsible for his friend, Couling, and his sister, Maria Sanchez, being fired from their jobs with the BISD. Chapa also testified that appellant had refused his request for help when Chapa ran for the Benavides city council, and that another candidate, who received appellant's endorsement, had won the election. Chapa admitted that he had told appellant that he would pay him back

for his refusal of support in the election, but explained that he had only meant that he would not vote for appellant in the future.

Ross testified before the jury that he had been fired from his job as superintendent of the BISD after appellant spoke against him at a school board meeting. He was also cross-examined before the jury about his daughter's use of the school-owned car, and stated that he had an agreement with the district to purchase the car. In answer to questions by defense counsel, Ross denied before the jury any knowledge that he had been investigated by the Texas Rangers concerning his activities while superintendent at the BISD.

█ In summary, appellant was allowed to explore before the jury the possibility that Chapa and Ross were testifying against him in order to get revenge. Appellant was also allowed to question Ross to a limited extent about his alleged misappropriation of school property. In light of this testimony before the jury, and in the absence of any evidence linking the alleged wrongdoings of Chapa and Ross to their appearance as witnesses against appellant, the trial court did not abuse its discretion in excluding the proffered impeachment testimony.

The disallowed impeachment of Taylor concerned theft from the SDISD. Taylor testified on appellant's bill of exception that while he was employed as superintendent of the SDISD he had stolen approximately $8,000 to $10,000 from the district. He also testified that he had not been indicted for this theft, and understood that he would not be indicted as part of an agreement he had with the State.

Taylor testified before the jury that he had previously pled guilty to income tax evasion and had been incarcerated for that offense in a federal penitentiary. He further testified that in November, 1975, after his release from prison, he was tried on a State indictment alleging theft from the BISD. This trial ended in a mistrial. At this point, Taylor sought and subsequently

entered into a written agreement with the State. This agreement provided that if Taylor would testify concerning his knowledge of the criminal activities of appellant and others, and would enter a plea of guilty to the theft indictment, the State would recommend probation. The agreement further provided that appellant would not be indicted for any offenses committed by him to which he might testify during appellant's trial or the trials of the other individuals.

Taylor's criminal record and his agreement with the State were known to the jury. The additional impeaching effect of the excluded testimony would have been slight, at best. The trial court did not abuse its discretion in excluding the testimony.

Taylor also testified on appellant's bill of exception that he had testified for the State in the trial of Nago Alaniz, but that the defendant in that case had been acquitted. Appellant contends that the trial court erred in excluding this testimony.

The record does not reveal the nature of the charges against Alaniz, or if that case was in any way related to the instant case. Appellant argues that this testimony suggests a motive for Taylor to testify against him in that Taylor may have felt "additional pressure to produce for the State" because of the result in the Alaniz case. However, this argument assumes that the acquittal of Alaniz was the result of weakness in Taylor's testimony, an assumption which is without support in the record. There is also nothing in the record to indicate that the State's agreement to recommend probation in Taylor's theft case was conditioned on the outcome of the cases in which Taylor was to testify. The trial court did not abuse its discretion in excluding this testimony.

■ Appellant contends that the trial court's charge contained erroneous instructions on the law of principals. The charge on principals reads as follows:

"It is our law that all persons are principals who are guilty of acting together in the commission of an offense; and principals, whether jointly indicted or not, may be legally prosecuted and convicted as such, provided the evidence adduced against each clearly and satisfactorily establishes the guilt of each. When an offense is actually committed by one person but another is present and, knowing the unlawful intent, aids by acts or encourages by words those actually engaged in the commission of the unlawful act, such person so aiding or encouraging is a principal and may be prosecuted as such. Further, when an offense is actually committed by one person but another advises or agrees to the commission of the offense and is present when the offense is committed, such person so advising and agreeing is a principal and may be prosecuted as such. Further, all persons who engage in procuring aid, arms, or means of any kind to assist in the commission of an offense, while others are executing the unlawful act, and all persons who endeavor at the time of the commission of the offense to secure the safety or concealment of the offenders are principals and may be prosecuted as such.

"When an offense has been actually committed by one or more persons, the true criterion for determining who are principals is: Did the parties act together in the commission of the offense; was the act done in pursuance of a common intent and in pursuance of a previously formed design in which the minds of all united and concurred? If so, then it is our law that all are alike guilty, provided the offense was actually committed during the existence and the execution of the common design and intent of all, whether in point of fact all were actually bodily present on the ground when the offense was actually committed or not.

"You are instructed that if there was no such common design and intent of all to commit the offense, or if the offense, if any, was committed by one or more, acting independently of the Defendant in so doing and without participation by the Defendant in the design and intent to commit it, then the Defendant is not

guilty. At the time of the commission of the offense the parties must be acting together, each doing some part in the execution of the common purpose. If you have a reasonable doubt as to such matters, you must give the Defendant the benefit of the doubt and acquit him.

"The mere presence of a party at or near the commission of an offense does not make him a party to the offense, nor will mere knowledge that an offense is about to be committed or has been committed make him a party to the offense, nor will his mere failure to give alarm, his silence or inaction make him a party to the offense."

The court then applied the law to the facts of the case in the following manner:

"Now if you believe from the evidence beyond a reasonable doubt that in Duval County, Texas, on or about the 4th day of May, 1972, the Defendant, Oscar Carrillo, acting alone or together with others as a principal, unlawfully and fraudulently took two thousand five hundred one (2,501) postage meter stamps numbered 561541 of the value of over two hundred dollars ($200.00), the same then and there being the corporeal personal property of Ken Bercaw from the possession of the said Ken Bercaw, without the consent of the said Ken Bercaw and with the intent then and there to deprive the said Ken Bercaw of the value of the same and to appropriate it to the use and benefit of himself, the said Oscar Carrillo, individually or as a principal with others, you will find the Defendant, Oscar Carrillo, guilty as charged in the indictment.

"Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant."

Appellant contends that the second paragraph of the charge on principals is incorrect because it does not require that a party not present at the commission of the offense must be doing some act in furtherance of the offense at the time of its commission in order to convict the party as a principal. In support of this contention appellant cites *Criner v. State*, 41 Tex.Cr.R. 290, 53 S.W. 873 (1899), *Davis v. State*, 55 Tex.Cr.R. 495, 117 S.W. 159 (1909), and *Silvas v. State*, 71 Tex.Cr.R. 213, 159 S.W. 223 (1913).

In 2 Branch's Ann.P.C., Sec. 713 (2d ed. 1956), many cases, including those cited by appellant, are cited for the following rule:

"The . . . charge [given in the second quoted paragraph] would be reversible error in every felony case where the defensive theory was an alibi, or where the inculpatory proof is circumstantial and consists of proof of acts occurring either before or after the commission of the offense or both, or where there is any evidence that the defendant, if guilty at all, would be guilty only as an accomplice or as an accessory or both."

In the instant case, there was no alibi defense, the proof was not circumstantial, and there was no evidence that appellant was guilty only as an accomplice or accessory. Thus, even under the cases cited by appellant, the second paragraph of the charge on principals is not erroneous.

Moreover, in *Middleton v. State*, 86 Tex. Cr.R. 307, 217 S.W. 1046 (1919), this Court reviewed most of the cases cited in Branch's, including those cited by appellant, and overruled them to the extent they held that the second quoted paragraph is incorrect. The Court went on to state that

"if the unquestioned proof showed that the accused was a principal under any phase of the statute defining principals, the charge should not be held reversible error." 217 S.W. at 1053.

The unquestioned evidence in this case showed that appellant was a principal to the theft of the postage. Giving the charge in question was not reversible error. See also *Serrato v. State*, 74 Tex.Cr.R. 413, 171 S.W. 1133 (1914) and *Johnson v. State*, 151 Tex.Cr.R. 192, 206 S.W.2d 605 (1947).

Appellant also contends that the second paragraph of the charge on principals irreconcilably conflicts with the third paragraph, citing *Criner v. State*, supra, and *McAlister v. State*, 45 Tex.Cr.R. 258, 76 S.W. 760 (1903). In those cases, the trial

court instructed the jury that the defendant could be convicted as a principal even if he was not present when the offense was committed, but then instructed them to acquit the defendant if they had a reasonable doubt that the defendant was present. There is no such conflict in this case.

The second paragraph of the charge on principals instructs the jury that if the parties were acting together pursuant to a common design to commit the offense they are guilty as principals whether or not all were bodily present when the offense was committed. The third paragraph of the charge on principals instructs the jury to acquit appellant if they have a reasonable doubt as to either the "common design" or "acting together" element. It does not instruct the jury to acquit appellant if they have a reasonable doubt that he was present. While the third paragraph is not a model, it does not conflict with the second paragraph.

Appellant contends that the trial court erred by failing to give an affirmative submission on the converse of the law of principals. In this connection, appellant contends that the court erred in refusing to give the following specially requested charge:

"To convict the defendant as a principal, you must find from the evidence beyond a reasonable doubt that he was actually present at the time of the commission of the alleged offense, if any, or, if not present at the time of the commission of the alleged offense, if any, that he was, at the time the alleged offense was being committed, himself actively engaged in the furtherance of the alleged common purpose and design at some other place. Thus, if you find from the evidence, or you have a reasonable doubt thereof that the defendant, Oscar Carrillo, was not present at the time the offense was committed, if one was, and was not doing some act in furtherance of a common purpose and design between himself and another, if there was such a purpose and design, at the time the alleged offense was committed, if it was, then the defendant would not be a principal and you must acquit him."

In the third paragraph of the charge on principals the trial court instructed the jury that if there was no common design and intent to commit the offense, or if the offense was committed by a person or persons acting independently of appellant and without his participation in the criminal design, appellant was not guilty. The court also instructed the jury that the parties must have been acting together in the execution of the common design at the time the offense was committed, and that if the jury had a reasonable doubt as to this they were to acquit appellant. This paragraph presents appellant's defense affirmatively, and it was unnecessary to include the defense in any other paragraph of the charge. *Serrato v. State*, supra. The charge as given was adequate to protect the rights of appellant. Art. 36.19, V.A.C.C.P.

We also note that the first sentence of the specially requested charge may be read to authorize a conviction as a principal based on the party's mere presence at the offense. This, of course, is not the law. 2 Branch's Ann.P.C., Sec. 709 (2d ed. 1956). The trial court did not err in refusing to give the specially requested charge.

Appellant contends that the charge was fundamentally defective because it permitted a conviction on a theory not supported by the evidence. Specifically, appellant refers to that portion of the charge applying the law to the facts, quoted previously, where the court authorized the jury to convict appellant if they believed he took the postage while "acting alone or together with others as a principal." Appellant correctly points out that there is no evidence that appellant acted alone in the commission of the charged offense.

▮ Appellant did not bring this error in the charge to the attention of the trial court by means of a timely objection. Thus, this case is distinguishable from *Savant v. State*, 544 S.W.2d 408 (Tex.Cr.App. 1976), on which appellant relies. We hold the error complained of was not calculated to injure appellant's rights, and did not deny him a fair and impartial trial. Art.

36.19, V.A.C.C.P.; *Carrillo v. State*, 566 S.W.2d 902 (Tex.Cr.App.1978).

Appellant testified that he never instructed Couling or anyone else to use the BISD postage meter to mail his campaign material, and that he never took or sent campaign material to the tax office. In fact, appellant testified that he did not learn that tax office employees had worked for his campaign until 1976. Appellant acknowledged that Chapa had been employed as a campaign worker, and stated that he had made several cash payments to him for expenses. Appellant testified that he paid Chapa $200 to reimburse him for the purchase of postage, and offered in evidence a check for that amount dated May 22, 1972, payable to Chapa and signed by appellant's wife. The check carries the notation "campaign helper."

 Appellant contends that his testimony raised the defensive issue of purchase, and that the trial court erred in failing to give an affirmative charge on this issue after appellant objected to this omission. The applicable rule is that if the defensive theory is purchase in good faith, then the defendant is entitled to an affirmative charge on this defense; it is only necessary to charge the jury that if the defendant purchased the property in good faith or if there is a reasonable doubt that he so purchased it, he should be acquitted. *Cozby v. State*, 506 S.W.2d 589 (Tex.Cr.App.1974).

 An accused is entitled to an affirmative instruction on a defensive issue only if the issue is raised by the evidence. *Cerda v. State*, 557 S.W.2d 954 (Tex.Cr.App. 1978); *Barton v. State*, 172 Tex.Cr.R. 600, 361 S.W.2d 716 (1962). While appellant testified that he gave Chapa money to pay for postage, he did not testify, and there is no other evidence in the record, that he reimbursed the BISD or otherwise purchased in good faith the metered postage which was the subject of this prosecution. Indeed, appellant denied having any knowledge that the BISD meter had been used in his campaign. In the absence of any evidence raising the defensive theory of purchase, the trial court did not err in failing to charge on that theory.

Appellant testified that Couling was acting without his knowledge or consent when he ran appellant's campaign envelopes through the BISD postage meter. Appellant contends that the trial court erroneously refused, over his objection, to charge on the defensive theory of lack of knowledge.

We have previously quoted the trial court's charge on the law of principals. In it, the jury was instructed that if they found or had a reasonable doubt that there was no common design and intent to commit the offense, or if the offense was committed by persons "acting independently of the Defendant in so doing and without participation by the Defendant in the design and intent to commit it," they were to acquit appellant. We hold that this instruction adequately protected appellant's rights insofar as his defensive theory of lack of knowledge is concerned. See *Mitchell v. State*, 517 S.W.2d 282 (Tex.Cr.App.1975); *Jordan v. State*, 500 S.W.2d 638 (Tex.Cr. App.1973); *Smith v. State*, 496 S.W.2d 564 (Tex.Cr.App.1973); *Dukes v. State*, 161 Tex. Cr.R. 423, 277 S.W.2d 710 (1955).

Appellant contends that the trial court erred in refusing to instruct the jury that Chapa and Taylor were accomplice witnesses as a matter of law. We have already considered and rejected appellant's contention that these witnesses were accomplices as a matter of law. No error is presented.

Appellant contends that Taylor's testimony concerning the extraneous theft of stamps from the SDISD was erroneously admitted because there was no evidence connecting appellant to this offense. He calls attention to the absence of any testimony by Taylor that appellant specifically told him to use stamps owned by the SDISD.

 Evidence of extraneous offenses or acts on the part of the accused is admissible to prove scienter, where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself. *Brooks v. State*, 580 S.W.2d 825 (Tex.Cr.App.1979); *Crawley v. State*,

513 S.W.2d 62 (Tex.Cr.App.1974); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972). However, the accused's connection with an extraneous offense must be shown before evidence of that offense may be admitted. *Tippins v. State*, 530 S.W.2d 110 (Tex.Cr. App.1975); *Fentis v. State*, 528 S.W.2d 590 (Tex.Cr.App.1975); *Tomlinson v. State*, 422 S.W.2d 474 (Tex.Cr.App.1968).

Taylor testified that appellant asked him to mail campaign literature and told him that the BISD was providing such assistance. This testimony was admissible to prove appellant's guilty knowledge with regard to the charged offense. *Crawley v. State*, supra. After Taylor agreed to help, appellant's campaign material was delivered to his office at the SDISD, where the envelopes were addressed, stuffed, and stamped with stamps purchased by the SDISD. While Taylor did not testify that appellant told him to use school-owned stamps, his testimony does tend to connect appellant to this offense. This is not a case in which there was a total absence of evidence connecting the defendant to the extraneous offense. Compare *Tippins v. State*, supra; *Fentis v. State*, supra; *Tomlinson v. State*, supra; *Carmean v. State*, 163 Tex.Cr.R. 218, 290 S.W.2d 240 (1956).

■ The trial court charged the jury that they were to consider evidence of extraneous offenses only if they believed beyond a reasonable doubt that appellant committed the offenses, and were to limit their consideration of these offenses to the issue of appellant's intent, scheme, and system to commit the charged offense. We hold that the trial court did not commit reversible error in admitting Taylor's testimony concerning the theft of stamps from the SDISD.

During his direct examination, Couling was asked the following question concerning Grace Bridges, a BISD employee who the evidence shows did campaign work for appellant at the tax office:

"Q. Was there any relationship between Mrs. Bridges and the Defendant, Oscar Carrillo, that would cause her to want to aid him in his campaign or was she doing this out of the goodness of her heart?

"MR. HAYNES: We object to that question because it is asking this witness to give an opinion as to why some other person was assisting in the campaign.

"THE COURT: He may answer if he knows.

"THE WITNESS: Yes, sir, they were more than friends, sir."

Appellant contends that the State was attempting to prove that he had an adulterous relationship with Bridges, that such evidence was inadmissible, and that the trial court erred in overruling his objection.

■ Appellant's contention on appeal differs from his trial objection. *McIlveen v. State*, 559 S.W.2d 815 (Tex.Cr.App.1977); *Lejeune v. State*, 538 S.W.2d 775 (Tex.Cr. App.1976). Moreover, the record reflects that a similar question, eliciting a similar answer, was asked of another State witness, Maria Raymond, without objection by appellant. The error, if any, was not preserved. *Cannon v. State*, 574 S.W.2d 71 (Tex.Cr.App.1978).

During his questioning of the witness M. K. Bercaw, Jr., the prosecutor asked if he knew whether or not Grace Bridges was under indictment. Appellant objected, the question was withdrawn by the prosecutor, and the trial court instructed the jury to disregard the question. Appellant contends that the trial court erred in refusing to grant his request for a mistrial.

■ The prosecutor's question was improper; the character of a defendant's associates is no evidence of his guilt. *Koller v. State*, 518 S.W.2d 373 (Tex.Cr.App. 1975); *Gant v. State*, 513 S.W.2d 52 (Tex. Cr.App.1974). However, the error in asking an improper question generally may be cured or rendered harmless by the withdrawal of the question and an instruction to disregard except in extreme cases where it appears that the question was clearly calculated to inflame the minds of the jury and was of such character as to suggest the impossibility of withdrawing the impression

produced on the jurors' minds. *White v. State*, 444 S.W.2d 921 (Tex.Cr.App.1969); *Wheeler v. State*, 413 S.W.2d 705 (Tex.Cr. App.1967). In the instant case, the record does not reflect that the prosecutor asked the question in bad faith. The question was not so prejudicial to appellant as to render the court's instruction to the jury insufficient to cure the error.

Appellant contends that the trial court erred in permitting Ramiro Martinez, a Texas Ranger, to testify at the punishment stage that appellant's reputation for being law-abiding was bad. This contention is based on Martinez' admission that he had never discussed appellant's reputation with persons living in the community.

A witness is not qualified to testify that the defendant's reputation for being peaceful and law-abiding is bad if the witness states that he has never heard that reputation discussed in the community. *Mitchell v. State*, 524 S.W.2d 510 (Tex.Cr. App.1975); *Weatherall v. State*, 159 Tex. Cr.R. 415, 264 S.W.2d 429 (1954); *Gilson v. State*, 140 Tex.Cr.R. 345, 145 S.W.2d 182 (1940). Martinez testified that he had heard appellant's reputation being discussed by persons in the community, and that his testimony was based on what he had heard. The trial court did not err in permitting Martinez to testify. *Smith v. State*, 162 Tex.Cr.R. 237, 283 S.W.2d 936 (1955).

Appellant contends that the trial court made an improper remark during the cross-examination of Chapa. Defense counsel was questioning Chapa about his testimony that appellant had given him some envelopes and instructed him to deliver them to Couling when the following exchange took place:

"Q. And gave you the envelopes?

"A. He gave me the box of envelopes and I set them in my car and I took off for Benavides. My mother was going to wash my laundry.

"Q. At the time we are talking about you would take your laundry home to your mama and have her wash it for you?

"A. That is right.

"Q. You couldn't do it for yourself—

"THE COURT: Oh, counsel, move on, for Pete's sake.

"MR. HAYNES: May we approach the Bench?

"THE COURT: You may at the recess.

"MR. HAYNES: We would like to now.

"THE COURT: This is getting to be a farce. Sit down, please.

"MR. HAYNES: If the Court please—

"THE COURT: If I have to call an officer, I will. Sit down.

"MR. HAYNES: I have a responsibility to my client.

"THE COURT: I will allow you to have that responsibility at the recess. Please sit down, Mr. Haynes."

Appellant's subsequent motion for a mistrial based on the "farce" comment was denied.

Appellant argues that the comment in question, which he asserts was made in a tone of voice and accompanied by gestures indicating displeasure, was a comment on the weight of the evidence. See Art. 38.05, V.A.C.C.P. To constitute reversible error in violation of Art. 38.05, supra, the comment must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights. *Kincade v. State*, 552 S.W.2d 832 (Tex.Cr.App.1977); *Hernandez v. State*, 507 S.W.2d 209 (Tex. Cr.App.1974). The remark in question was no more than an unguarded response to counsel's insistence on pursuing a wholly irrelevant line of questioning. The record does not warrant the conclusion that the comment was calculated to benefit the State or prejudice appellant. See and compare *Kincade v. State*, supra; *Hernandez v. State*, supra; *McCarter v. State*, 163 Tex. Cr.R. 413, 292 S.W.2d 111 (1956).

Appellant contends that the trial court permitted the prosecutor, in his argument at the guilt-innocence phase of the trial, to accuse defense counsel of sponsoring per-

jured testimony. The prosecutor argued as follows:

"It amazes me that Defense lawyers like to spend all the time allotted to them throwing up smoke screens and rabbit trails talking about something to get the jury's mind off the issues in this case and the guilt of their client. They would have you try everyone involved.

"If you believe them, except for the Postmaster, this is a gigantic conspiracy against Oscar Carrillo. That is just not so and I don't think you believe it. You have to totally disbelieve all the evidence you heard to believe Oscar Carrillo is innocent.

"What are some of the things that they have said? You recall during the opening statement of Defense counsel, they said that they would attempt to prove that there was a scheme between Couling and Chapa. Do you remember that testimony? I'm sorry. Do you remember that evidence or the argument of Defense counsel?

"I submit to you that there is no evidence of a scheme between these two men and it is only in the vivid imagination of Defense counsel over here. It is certainly not based on any evidence.

"They are right about one thing. They don't have the burden to prove anything in this case. The State has the burden of proving to you beyond a reasonable doubt that the Defendant is guilty as charged in the indictment.

"However, once they put on testimony in a case, the law does not give them the right to place witnesses on the stand and give perjured testimony and ask you to believe them under oath.

"MR. HAYNES: There is no evidence of perjured testimony. That is an improper comment.

"THE COURT: Overruled.

"MR. CARRUTH: Once they have assumed the responsibility of calling witnesses, then they—the law does not allow them to put on any kind of testimony. Their witnesses, once they take the stand, you are entitled to judge their credibility just as you are any other witness. That is your duty as jurors.

"You are the exclusive judges of the facts proved in this case, the credibility of the witnesses, and the weight to be given their testimony.

"In that regard, you may believe everything a witness says, you may totally disbelieve everything a witness say, or you may believe part and disbelieve part of what a witness says. That is your duty as jurors. That is why you are here.

"When you judge their credibility, you judge the credibility of the Defense witnesses the same as they have asked you to judge the credibility of the State's witnesses. Certainly you could be fair to both sides in that regard."

It is certainly improper for the prosecutor, in his argument to the jury, to accuse defense counsel of manufacturing evidence, lying to the jury, or suppressing the truth. See *Lewis v. State*, 529 S.W.2d 533 (Tex.Cr.App.1975); *Anderson v. State*, 525 S.W.2d 20 (Tex.Cr.App.1975); *Lopez v. State*, 500 S.W.2d 844 (Tex.Cr.App.1973); *Jones v. State*, 151 Tex.Cr.R. 115, 205 S.W.2d 590 (1947). But the prosecutor in this case did not accuse defense counsel of any such impropriety; he made the legally correct statement that the defense has no right to use perjured testimony. Furthermore, any implication of impropriety which may be read into the prosecutor's statement must be considered in the context of the prosecutor's subsequent argument that the jury should apply the same tests of credibility to defense witnesses and prosecution witnesses. We hold that the remark of the prosecutor was not so clearly prejudicial to appellant as to require this Court to set aside the judgment of conviction.

Appellant contends that the trial court reversibly erred in refusing to permit appellant to make his bills of exception before the charge was read to the jury. The record reflects that the trial court refused to permit appellant to make his bills of exception concerning certain excluded testimony until after the jury had retired to deliberate his guilt or innocence.

■ Art. 40.09, Sec. 6(d)(1), V.A.C.C.P., provides that "[w]hen the court refuses to admit offered testimony or other evidence, the party offering same shall as soon as practicable but before the court's charge is read to the jury be allowed, out of the presence of the jury, to adduce the excluded testimony . . . ." Although the trial court did not comply with this article, it is clear that appellant was not harmed by this error. Appellant suggests that by ordering him to delay perfecting his bills of exception the trial court forced him to waive the errors which he has brought forward in three grounds of error. This is not the case; we have fully considered these three grounds of error, which have to do with the alleged bias of Ross and Taylor. Appellant suggests no other prejudice to him from the trial court's noncompliance with the statute, and we can perceive of none. This ground of error is overruled.

Appellant contends that his conviction was obtained in violation of the due process clauses of the United States and Texas constitutions because documents which would have corroborated his defensive testimony were stolen in a burglary of his office. The evidence on which appellant bases this contention was adduced during the hearing on appellant's motion to suppress approximately three hundred campaign envelopes which had been found in a ditch outside San Diego by Texas Rangers acting on an anonymous tip.

The evidence reflects that in February, 1976, Ruben Chapa told Neal Duvall, an assistant attorney general, and Ramiro Martinez, a Texas Ranger, that he had seen a large number of campaign envelopes with metered postage in a room that had at one time been used as appellant's office in Benavides. Hoping to obtain a warrant to search this office for the letters, Duvall prepared an affidavit tracking Chapa's statement, but Martinez refused to sign it. According to Martinez' testimony it was approximately one week later that he received the anonymous tip which led him to the envelopes. These envelopes bore the BISD postage meter stamp and markings indicating that they had been returned to appellant's post office box due to insufficient addresses.

Both at the suppression hearing and at the trial appellant testified that in early 1976 he discovered that someone had broken into his office in Benavides. He stated that his personal campaign records, including receipts, cancelled checks, and records of his itinerary had been stolen, and that without these records he could not adequately present his defense. With respect to the envelopes found in the ditch, appellant testified that his secretary had told him that a lot of campaign mail had been returned and that he had instructed her to store it in his office; he denied ever having seen the envelopes. Appellant admitted that he never reported this burglary of his office to the police.

The trial court granted appellant's motion to suppress the envelopes, but denied his motion for an instructed verdict of not guilty. Appellant argues that the evidence is "clear and convincing . . . that this burglary and theft were perpetrated by an agent or agents of the State," and that this Court "must not sanction this conduct by permitting the conviction to stand."

It cannot be denied that the circumstances surrounding the discovery of the envelopes in the ditch are suspicious. For this reason, the careful trial court granted appellant's motion to suppress. But, in fact, there is no evidence in the record that the envelopes found in the ditch had been taken from appellant's office. Moreover, there is no evidence, other than appellant's own self-serving testimony, that his office was burgled and documents of benefit to his defense taken. Most importantly, there is no evidence, much less clear and convincing evidence, that this burglary, if it happened, was committed by any officer or agent of the State.

■ This Court does not condone and will not tolerate unlawful conduct by police or other agents of the State. We will not hesitate to strike down any conviction obtained as a result of such conduct. But we will not reverse a judgment of convic-

tion on the basis of an unsubstantiated claim by the appellant that evidence of benefit to his defense was stolen by State agents. This ground of error is overruled.

■ Finally, appellant contends that the trial court erred in refusing to set aside the indictment because the jury commissioners intentionally and systematically excluded persons from the grand jury who shared appellant's political affiliation, thereby producing an invidious discrimination based on political affiliation and denying appellant due process and equal protection of the law. He also contends that jury commissioners Gilberto Hinojosa and Josefa Martinez selected prospective grand jurors with the view that those selected would return an indictment against appellant.

The record reflects that the hearing on appellant's motion to quash the indictment was held in conjunction with the motion to quash the indictment against appellant's brother, O. P. Carrillo. The evidence adduced at this hearing was considered by this Court, and identical grounds of error were overruled, on appeal from O. P. Carrillo's conviction. *Carrillo v. State*, supra, at 917. The reasoning of the Court in that opinion is fully applicable to the instant case, and need not be restated in this opinion. These grounds of error are overruled.

The judgment is affirmed.

ROBERTS, J., not participating.

PHILLIPS, Judge, concurring.

At trial Brian Taylor testified to appellant's commission of an extraneous offense. In his 19th ground of error appellant urges that the extraneous offense was inadmissible because it was never shown that appellant committed the extraneous offense. The majority correctly overrules appellant's contention; in doing so, however, it applies an incorrect standard for determining the admissibility of extraneous offenses.

The majority holds that "the accused's connection with an extraneous offense must be shown before evidence of that offense may be admitted," citing *Tippins v. State*, 530 S.W.2d 110 (Tex.Cr.App.1975); *Fentis*

*v. State*, 528 S.W.2d 590 (Tex.Cr.App.1975); *Tomlinson v. State*, 422 S.W.2d 474 (Tex.Cr.App.1968). The majority goes on to note that "[t]his is not a case in which there was a total absence of evidence connecting the defendant to the extraneous offense," citing *Carmean v. State*, 163 Tex.Cr.R. 218, 290 S.W.2d 240 (1956), in addition to the above cases.

The standard for determining the admissibility of an extraneous offense is not whether an accused is *connected* with the offense, but whether the accused is *shown to have committed* the offense:

. . . even though evidence of another crime may be relevant to the instant proceeding, such evidence should not be admitted unless the commission of the other crime is clearly proved and the accused is shown to have been its perpetrator.

28 Tex.Jur.2d, Evidence, Sec. 195, p. 302. See *Eanes v. State*, 546 S.W.2d 312 (Tex.Cr.App.1977); *Landers v. State*, 519 S.W.2d 115 (Tex.Cr.App.1974, Opinion on State's Motion for Rehearing).

It is error to admit evidence of another offense when [the] defendant is not shown to be the party guilty of that offense. . . .

1 Branch's Ann.P.C. 2d ed., Sec. 188, p. 204.

. . . where the State seeks to admit extraneous offenses, the transactions should not be allowed into evidence unless the State is prepared to prove that the accused committed the same. . .

*Shaver v. State*, 496 S.W.2d 604 (Tex.Cr.App.1973).

. . . ., it seems to be well settled in this state that evidence of extraneous offenses shall not be received unless the accused is satisfactorily shown to be a party to the commission of such offense, even though proof of extraneous offenses comes within some of the exceptions.

. . .

*Shepherd v. State*, 143 Tex.Cr.R. 387, 158 S.W.2d 1010 (1942).

. . . Before this character of evidence could be admitted against appellant, there should have been some testimony indicating with a reasonable degree of certainty that appellant was guilty of the theft of the Darnell cattle. . . . *Walton v. State,* 41 Tex.Cr.R. 454, 55 S.W. 566 (1900). See *Fountain v. State,* 90 Tex. Cr.R. 474, 241 S.W. 489 (1921).

Two of the cases relied on by the majority, *Tippins,* supra, and *Tomlinson,* supra, applied this stricter standard. In *Fentis,* however, it was stated that "an accused's connection with an extraneous offense must be shown with some degree of certainty before evidence of that offense can come in, assuming it is relevant." *Fentis* cited *Carmean,* supra, also relied on by the majority. This Court in *Carmean* concluded that in the absence of any testimony connecting the appellant with the extraneous offense, the admission of that offense was error. *Carmean* relied on *Glenn v. State,* 76 S.W. 757 (Tex.Cr.App.1903), which applied the following standard of admissibility:

. . . But in every case where such extraneous crimes are admissible there must be pertinent testimony *tending to show that appellant was guilty* of the extraneous offense. . . . [Emphasis added.]

The Court in *Glenn* relied on *Williams v. State,* 38 Tex.Cr.R. 128, 41 S.W. 645 (1897), and therein lies the source of the confusion:

. . . In this case, however, as previously stated, there is no proof pertinently connecting defendant with the commission of the burglary on the 31st of March. In this regard it would seem that, before evidence of an extraneous crime can be offered, some cogent evidence should be adduced of appellant's connection therewith; . . .

*Id.* 41 S.W. at 648.

This language in *Williams* was quickly discarded in *Walton,* supra, in favor of the stricter language set forth previously. *Walton* did not overrule *Williams,* and in fact cited *Williams* as its sole authority. It is clear, however, that the Court in *Walton* rewrote the *Williams* standard.

The *Walton* language became the prevailing standard, and for good reason. An accused is entitled to be tried solely on the accusation brought against him by the State's pleading; he should not be tried for a collateral crime or for being a criminal generally. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972); *Ford v. State,* 484 S.W.2d 727 (Tex.Cr.App.1972). Evidence of other crimes is admissible only for certain limited purposes because it is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges of which he was given no notice. *Albrecht,* supra; *Cameron v. State,* 530 S.W.2d 841 (Tex.Cr.App.1975). Given its limited probative value and inherent prejudicial impact, an extraneous offense should not be admitted in evidence unless the trial court is assured that the defendant actually committed the offense.

Despite the general application of the stricter language set forth in *Walton,* et al., this Court occasionally has used the language from *Williams* in its decisions. See the cases cited previously; see also *Perez v. State,* 310 S.W.2d 334 (Tex.Cr.App.1958); *Hooks v. State,* 261 S.W. 1053 (Tex.Cr.App. 1924). In most of these cases there was no evidence to even connect the defendant with the extraneous offense; hence the offense was inadmissible under either standard and it did not matter much which standard was used. In this case, however, a fact issue is raised and the extraneous offense is held admissible; thus the standard applied achieves much greater importance.

This Court should not operate under two standards of admissibility for extraneous offenses. The time has come to overrule or clarify the offspring of *Williams,* to the extent they apply a standard of proof for admissibility of extraneous offenses that conflicts with the prevailing standard. I hereby propose that this Court do so. It is not sufficient to merely show that a defendant is *connected* with an extraneous offense in order to admit evidence of that offense; it must be shown that the defendant *committed* the offense.

I concur in the result reached in this case because the State showed that appellant

committed the extraneous offense of theft of stamps from the San Diego Independent School District. In addition to his testimony referred to in the majority opinion, Taylor testified that appellant asked him if the *school* could help mail out some of his campaign literature. This testimony establishes that appellant knew and expected that the mailing costs were to be borne by the school. Taylor further testified that appellant came in from time to time to check on the progress of the campaign work, as he had with the Benavides School District. The evidence was sufficient to show that appellant committed the extraneous offense.

I concur in the result reached on appellant's 19th ground of error.

ROBERTS, J., not participating.